KATHERINE V. K. BRUNS and Others, Respondents, Appellants, *v.*
FIRST TRUST AND DEPOSIT COMPANY, Successor to CITY BANK
TRUST COMPANY, as Trustee under Trust Agreement with
FREDERICK V. BRUNS, Dated May 31, 1928, Respondent, and
FIRST TRUST AND DEPOSIT COMPANY, as Executor, etc., of
FREDERICK V. BRUNS, Deceased, Appellant, and FIRST TRUST
AND DEPOSIT COMPANY, as a Creditor of the Estate of FREDERICK
V. BRUNS, Deceased, Respondent.

Fourth Department, March 10, 1937.

*Joseph M. Meatyard*, for the appellant, First Trust and Deposit Company, as executor, etc., of Frederick V. Bruns, deceased.

*Benjamin E. Shove*, for the plaintiffs, respondents, appellants.

*H. Duane Bruce*, for the respondent, First Trust and Deposit Company, as trustee, etc., and as creditor of the estate of Frederick V. Bruns, deceased.

All concur, except CROSBY and CUNNINGHAM, JJ., who dissent in part in memoranda.   Present — SEARS, P. J., EDGCOMB, THOMPSON, CROSBY and CUNNINGHAM, JJ.

CROSBY, J.   (dissenting).   There should be a marshaling of assets so as to require the bank to satisfy its lien out of the insurance money, in order to leave something to which unsecured creditors can look for the satisfaction of their claims.

CUNNINGHAM, J. (dissenting).   Frederick V. Bruns in his life-time executed a voluntary trust agreement by which he deposited with the City Bank Trust Company of Syracuse, as trustee, twelve life insurance policies, having a total face value of $62,000, to be held by the trustee during the life of the settlor, and to be collected upon his death, and the proceeds invested in a trust fund for the benefit of Mrs. Bruns and the settlor's four children.   The agreement provides that the trustee may receive other insurance policies in addition to those mentioned, for the purpose of the trust thereby created, and that the same should be held by the trustee subject to the terms of the agreement.   Mr. Bruns reserved the right to withdraw from the trust during his lifetime any of said policies, and to sell, assign or pledge the same, or to borrow thereon.   The settlor also reserved the right during his lifetime to modify, alter or terminate the agreement in whole or in part.   The trust agreement was dated May 31, 1928, and was executed on that day. On August 31, 1931, Mr. Bruns modified the trust agreement by adding thereto a provision that the insurance policies held under said trust be first held by the trust company as collateral security for any indebtedness owing to it and that the lien of the trust company thereon should be superior and prior to all other provisions of said trust agreement.   On September 29, 1932, the settlor delivered to the trustee a policy for $20,000 to be added to those already held by the trustee.   On December 31, 1932, he added three more policies, two for $5,000 each, and one for $2,000.   On May 29, 1934, he substituted two other policies for $5,000 each for the two policies added to the trust on December 31, 1932.   It has been held in this case that the additional policies deposited by the settlor with the trustee are held by the trustee as collateral for the indebtedness of Mr. Bruns.   The determination of this question depends upon the construction to be given to the instruments executed by the settlor when he delivered these additional policies. These instruments recite that the additional policies are to be held on the same terms and conditions " as those now held by you under this trust."   It does not say under the trust agreement. It must be remembered that the trust company was holding these

policies as trustee and as creditor. When he refers to the trust, he refers to the trust created for the benefit of his wife and children. These instruments also refer to the agreement " dated May 31, 1928," and do not say as subsequently amended. The receipts given by the trust company say that the policies would be added to the other policies " held under the trust." These exhibits indicate an intention that the additional policies should constitute a part of the trust estate and should not be held as collateral. This was the construction placed upon them by the parties. The notes given by the settlor to the trust company state the amount of insurance policies held as collateral and do not include the amount of the additional policies deposited. Furthermore, the note department of the trust company was not notified that the additional policies were held as collateral. Under these circumstances I believe that these instruments show an intention of the parties that the additional insurance policies should constitute a part of the trust estate and should not be held as collateral. I favor a modification of the judgment so as to provide that $31,829.11 of the insurance moneys belong to the trust estate, free from claims of the trust company and other creditors.

The official referee rendered the following opinion:

ANDREWS (WILLIAM S.), Official Referee.* On May 31, 1928, Frederick V. Bruns created a trust for the benefit of his wife and children. In pursuance of this design he delivered to the trustee, the City Bank Trust Company (now under a merger succeeded by the First Trust and Deposit Company), a number of insurance policies listed in the instrument and said to have a face value of $62,000. Upon his death or whenever the policies matured the trustee was to endeavor to collect the same and was to hold and invest the proceeds as a trust fund. All income, after deducting proper charges, was to be paid to the beneficiaries. Further " it is the purpose and intention of the Settlor [Bruns] that the principal of the trust fund hereby created shall be comprised of the proceeds of said life insurance policies and any other funds and property which may be added thereto during the lifetime of the Settlor." Also " the Trustee may receive any other insurance policies in addition to those above mentioned  *  *  *  for the purposes of the trust hereby created, and all such property shall be held by the Trustee subject to the terms of this agreement in the same manner as if it had been included in the description of the property hereby transferred to the Trustee."

* Now deceased.— [REP.

There seems to be no ambiguity as to these provisions. The trust fund is to consist of the avails of the enumerated policies and the avails of any other policies received by the trustee for the purposes of the trust.

The trust, however, was not irrevocable. Upon demand the policies named and any other policies deposited thereunder are to be delivered to Mr. Bruns and he reserves the right to sell, assign or pledge the policies and to borrow money thereon. He may also, by a written instrument, " modify, alter or terminate this agreement in whole or in part."

On August 31, 1931, Mr. Bruns, pursuant to its merger with the City Bank Trust Company, made the First Trust and Deposit Company successor as trustee, and in the same instrument, reciting his power to modify or alter the original agreement, added thereto a provision " that the insurance policies held under said trust be first held as collateral security for any indebtedness of mine to you and that your lien thereon as such collateral security be, and is hereby, made superior and prior to all other provisions of said trust agreement and may be exercised at any time, and this pledging of said policies shall be final and conclusive and without the right reserved to me to revoke or alter same."

At this time Mr. Bruns was indebted to the First Trust and Deposit Company in its capacity as a bank in the sum of $35,250.83. It is clear that the expression " any indebtedness of mine to you," at the date of the instrument refers to this sum, not to indebtedness owing by Mr. Bruns to the company as trustee.

As to whether the indebtedness mentioned also includes additional indebtedness created in the future, depends upon the language used. That it does intend to cover future indebtedness is assumed by all parties to this litigation. The plaintiffs, for instance, say in their brief in reference to the execution of this second instrument, " It was likewise contemplated that Mr. Bruns' direct obligation to the First Trust and Deposit Company would be increased." " All that Bruns did by Exhibit 2 was to add to Exhibit 1 a provision which permitted him to pledge the policies *then* held by the trustee to his indebtedness which it was contemplated was going to be increased." The defendants take the same view and I believe this is the proper construction.

On September 29, 1932, Mr. Bruns delivered to the trustee a $20,000 policy in the Provident Mutual Life Insurance Company " to be added to those held by you under my trust agreement, dated May 31, 1928, * * * and to be held by you on the same terms and conditions as those now held by you under this trust."

The receipt therefor signed by the trustee stated that the policy is " added to the other policies held under the trust above specified."

Here it might be claimed there is an ambiguity. On the whole, however, I think not. The trustee already certainly held some policies under the original agreement. This policy was to be " added " to them. By the amendment created by Exhibit 2 these policies were to be held subject to a lien. This policy was to be held under the same terms and conditions as the others. Mr. Bruns so stated explicitly. It and they were to be held under the terms of the original trust agreement as modified by Exhibit 2. Whether this policy was to be subject to a lien, as were they, might become important under other conditions. The language used by Mr. Bruns, however, clearly indicates that it was to be so held.

Later, on December 31, 1932, Mr. Bruns executed another instrument referring to the trust agreement, stating that he desired " to add certain additional policies of life insurance to those mentioned in said agreement " and adds that he, therefore, delivers to his trustee three policies described amounting to $12,000 — two in the Connecticut Mutual Life Insurance Company for $5,000 each and one in the Farmers and Traders Life Insurance Company for $2,000. These policies, however, were delivered and accepted " for the purpose of including the same and the proceeds thereof within the terms of the original trust agreement of May 31, 1928, above mentioned, the same to be held and the proceeds to be collected, distributed and disposed of exactly in accordance with the terms of said original agreement."

The meaning is clear. The original agreement of May 31, 1928, not that agreement as modified some years later, is to govern these policies. This disposition of them stands unrevoked and unchanged.

But it happened that in May, 1934, two new policies of $5,000 each in the Connecticut Mutual Life Insurance Company were substituted for the two just described, the latter apparently having been delivered to Mr. Bruns on his demand. They were delivered by Mr. Bruns to the trustee " to be added to those held by you under my trust agreement dated May 31, 1928, under which you are now acting as trustee, and to be held by you on the same terms and conditions as those now held by you under this trust."

As has been said, on this date the conditions of the trust were defined by Exhibit 1 as modified by Exhibit 2. The new policies were to be held as were the others.

The final result is that the trustee having collected, at Mr. Bruns' death, $73,386.72, holds that sum, less, however, the sum of $2,000

collected on the policy of the Farmers and Traders Life Insurance Company, to be held as collateral security for certain indebtedness of Mr. Bruns to the trust company in its capacity as banker.

On February 11, 1935, Mr. Bruns owed this bank in notes totaling in principal amount about $61,612.76. He was also indebted to the company as a banker as indorser of notes held by it which have not been paid and which may be uncollectible from the makers thereof something like $4,461.54. This was an indebtedness that had, at least, largely existed for some time and was represented in part by the last of a series of renewal notes for $56,630, which notes stated that to secure it there had been deposited as collateral certain shares of various stocks, corporate bonds and a second mortgage on some Cazenovia property and " $45,465 Life Ins. Pol."

Mr. Bruns died on February 27, 1935, leaving him surviving his wife and the four children mentioned in the trust agreement. He was then indebted to the company as banker in about the amount above stated, and he also owed a number of other creditors in the amount of some $30,000. Many of these last claims are unsecured. No property remained in his estate other than the collateral mentioned in the note of February eleventh (not including the insurance policies), and as has been stated upon these various policies included in the original trust agreement and later turned over to the trustee to become part of the trust, there has been collected $73,386.72.

The First Trust and Deposit Company as executor of Mr. Bruns claims that the trust company as creditor and banker of Mr. Bruns should first pay its entire indebtedness out of the proceeds of these policies, leaving the other collateral to the estate. It is said that where a creditor has recourse to two funds in the hands of the same debtor, and other claimants to but one of these two, the creditor must first enforce its claim against the fund to which the other creditors have no recourse. The general rule is undoubted. It does not seem applicable, however, in this case.

This doctrine as to the marshaling of assets is one of equity. Ordinarily the creditor by first enforcing his lien on the fund doubly charged might leave the debtor in possession of the other discharged of all lien obligations. But the doctrine does not apply where to enforce it third persons would be injured. It is not used to create injustice.

By the original agreement Mr. Bruns created a revocable trust in favor of his wife and children. At his death it matured unless revoked in whole or in part. In the latter case the proceeds of the insurance policies were to be held for the beneficiaries, subject

only to the lien imposed upon them. These proceeds were in no respect part of his estate.

He died, indebted to the bank. To secure this indebtedness the bank had a lien on two funds, certain securities belonging to his estate and also upon the proceeds of these policies in which his wife and children were interested. In modifying the trust agreement, he modified it only so far as was necessary to secure the bank. It would have been his duty to pay his debts from his own funds before resorting to funds held in trust for others, and to use such funds only so far as needed to supply any deficiency.

The same duty rests upon the executor of his estate. True, among others, it represents unsecured creditors. But it has no equitable right to deplete the trust fund so that the bank's lien on Mr. Bruns' personal property may be released for their benefit. On the contrary, the avails of this pledged personal property should be first exhausted in payment of the note of February eleventh and only any deficiency should be deducted from the trust fund.

This action is brought to obtain a declaratory judgment. In view of what has been said that judgment should declare, *first*, that the $2,000 collected from the insurance policy of the Farmers and Traders Life Insurance Company is unaffected by any provision as to collateral and belongs to the trust; *second*, that the First Trust and Deposit Company as creditor should first realize upon the individual collateral owned by Mr. Bruns at the time of his death and apply the proceeds upon the note of February eleventh; *third*, that it should apply upon any deficiency due upon that note and upon any other indebtedness owing by Mr. Bruns to it such part of the sum of $71,386.72 as may be necessary to satisfy that indebtedness; any balance belonging to the trust; *fourth*, that the plaintiffs and the First Trust and Deposit Company as creditor for the estate of Frederick V. Bruns should have the costs and disbursements in this litigation payable out of the trust funds.