# MEYER *v.* UNITED STATES.

No. 61.  Argued October 24, 1963.—
Decided December 16, 1963.

*Samuel W. Sherman* argued the cause for petitioner. With him on the brief was *Martin A. Gettinger.*

*Joseph Kovner* argued the cause for the United States. With him on the brief were *Solicitor General Cox, Assistant Attorney General Oberdorfer* and *Louis F. Claiborne.*

*Richard Katcher* filed a brief for *Lillian Wintner,* as *amicus curiae,* urging reversal.

Mr. Justice Clark delivered the opinion of the Court.

The ultimate issue in this case is the applicability of the doctrine of marshaling of assets. The Government urges that it be applied to effect the collection of its junior income tax lien on the cash surrender value of certain life insurance policies. The senior lien is secured by the entire proceeds of the policies and absorbs practically all of their cash surrender value. The proceeds of the policies are exempt from levy by creditors of the insured under state law.

In 1943 the deceased, Peter Meyer, pledged his insurance policies to a bank as collateral security for a loan, giving the bank the right to satisfy its claim out of the "net proceeds of the policy when it becomes a claim by death." When Mr. Meyer died, the insurance company paid the amount of the loan to the bank and the balance to the petitioner, Mr. Meyer's widow and beneficiary. The Commissioner claims, however, that the insurance proceeds must be marshaled, that the Government's admittedly junior tax lien must be paid from the cash surrender value of the policies and the bank from the remaining proceeds. The District Court agreed, 202 F. Supp. 606, and the Court of Appeals affirmed, 309 F. 2d 131. We granted certiorari because of the importance of the question in the administration of the income tax laws. 372 U. S. 934. We disagree with both courts and reverse the judgment.

I.

Peter Meyer owned four life insurance policies which named the petitioner, his wife, as beneficiary. Their face amount was $50,000 and their cash surrender value at his death was $27,285.87. He had retained the usual powers under such policies, namely, to change the beneficiaries, demand the cash surrender value and assign the

policies. In 1943, long before the tax assessments in this suit, he assigned the policies as collateral security for the repayment of a loan from the Huntington National Bank of Columbus, Ohio. The bank was given the right, in the event of death, to satisfy its claim out of the "net proceeds of the policy when it becomes a claim by death." At the time of Meyer's death, $26,844.66 was due on this loan.

It is not disputed that the Commissioner assessed deficiencies covering income taxes due by Mr. Meyer for the years 1945 and 1946, with a balance of $6,159.09 plus interest due at his death, and that notice of lien was filed in 1955. Meyer died on December 28, 1955, and petitioner was named executrix of his estate. After the insurance company paid the full amount of the loan to the bank and the balance remaining due on the policies to the petitioner, this suit was begun against petitioner, individually and as executrix, for the recovery of the full amount of the taxes due. Petitioner tendered the sum of $441.21, the difference between the cash surrender value and the amount paid to the bank, but claimed the remainder as exempt under New York Insurance Law § 166.* The District Court, however, granted summary judgment for the Government on the theory that the tax lien could be satisfied out of that portion of the proceeds that represented the cash surrender value by marshaling the funds and paying the bank's claim from the remainder

---

* "1. If any policy of insurance has been or shall be effected by any person on his own life in favor of a third person beneficiary, or made payable, by assignment, change of beneficiary or otherwise, to a third person, such third person beneficiary, assignee or payee shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person effecting the insurance." New York Insurance Law § 166.

of the proceeds. It followed the holding of the Second Circuit in *United States* v. *Behrens,* 230 F. 2d 504. The Court of Appeals affirmed on the same basis. We cannot agree.

## II.

This Court has held and the parties do not dispute that: absent a lien, recovery of unpaid federal income taxes from a beneficiary of insurance can be had only to the extent that applicable state law permits such recovery by other creditors of the insured, *Commissioner* v. *Stern,* 357 U. S. 39, 46–47 (1958); the insured taxpayer's "property and rights to property" under § 3670 of the Internal Revenue Code of 1939 are measured by the policy contract as enforced by applicable state law, *United States* v. *Bess,* 357 U. S. 51, 55–56 (1958); the cash surrender value of an insurance policy, where subject to the control of the insured, is "property and rights to property" under the section, *id.,* at 59; finally, the priority of liens is determined by the principle "first in time, first in right," *United States* v. *New Britain,* 347 U. S. 81 (1954). Applying New York law, this results in the bank's lien being the senior one on the entire proceeds of the policies with the tax lien only attaching to the cash surrender value subject to the bank's claim. The narrow question remaining is whether in such a situation the doctrine of marshaling of assets is compelled.

## III.

This Court has said that "[t]he equitable doctrine of marshalling [*sic*] rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." *Sowell* v. *Federal Reserve Bank,* 268 U. S. 449, 456–457 (1925). The Courts of Appeals of two Circuits have applied the doctrine, despite state law, to the collection of federal tax

liens. *United States* v. *Behrens, supra,* and *United States* v. *Wintner,* 200 F. Supp. 157, aff'd 312 F. 2d 749 (C. A. 6th Cir.). We note, however, that *Behrens* antedates our *Stern* and *Bess* opinions as well as those in *Aquilino* v. *United States,* 363 U. S. 509 (1960), and *United States* v. *Durham Lumber Co.,* 363 U. S. 522 (1960). These latter two cases held that competing liens of the Government for taxes and of subcontractors for labor and materials to a fund due the taxpayer under a general construction contract were controlled by applicable state law. This Court has never applied the doctrine of marshaling to federal income tax liens although it did deny the petition for certiorari filed in the *Behrens* case, *supra,* 351 U. S. 919. Nor has the Congress seen fit to lay down any rules with reference to the application of the doctrine, apparently leaving the problem to this Court.

## IV.

In considering the relevance of the doctrine here it is well to remember that marshaling is not bottomed on the law of contracts or liens. It is founded instead in equity, being designed to promote fair dealing and justice. Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties. Thus, state courts have refused to apply it where state-created homestead exemptions would be destroyed, *Sims* v. *McFadden,* 217 Ark. 810, 233 S. W. 2d 375; or where the rights of insurance beneficiaries would be adversely affected, *Bruns* v. *First Trust & Deposit Co.,* 250 App. Div. 370, 295 N. Y. Supp. 412; or where the rights of third parties having equal equity would be prejudiced, *Barbin* v. *Moore,* 85 N. H. 362, 159 A. 409; or where the

"head of the household" exemption was involved, *Westgrove Savings Bank* v. *Dunlavy,* 190 Iowa 1054, 181 N. W. 404, and *Pugh* v. *Whitsitt & Guerry,* 161 S . W. 953 (Tex. Ct. Civ. App.). Federal courts have likewise accepted this principle of the nonapplicability of the doctrine where, as here, one of the funds is exempt under state law. See *In re Bailey,* 176 F. 990, where a state legislative homestead exemption was held to be a superior equity in the hands of a bankrupt, preventing the marshaling of assets to his disadvantage; *Robert Moody & Son* v. *Century Savings Bank,* 239 U. S. 374, 378 (1915), where Iowa's requirement that a homestead, even when validly mortgaged, may be sold only for a deficiency remaining after exhausting all other property was declared available to a junior mortgagee to prevent a marshaling of assets; and *Lockwood* v. *Exchange Bank,* 190 U. S. 294, 300–301 (1903), where a waiver of state exemption statutes was held to have no effect in bankruptcy since the title to the exempted property remained in the bankrupt and never reached the trustee's hands. It, therefore, seems clear that the courts have considered state exemption statutes when weighing the equities between parties to determine the applicability of the marshaling doctrine. This is in line with that deference to state law of our recent cases, discussed above, holding that state law controls the determination of what is included within the "property or right to property" covered by § 3670 and upon which the federal tax lien could attach. In addition, this Court in *United States* v. *Brosnan,* 363 U. S. 237 (1960), when faced with a comparable problem involving collection of federal taxes, found

> "it desirable to adopt as federal law state law governing divestiture of federal tax liens, except to the extent that Congress may have entered the field. It is true that such liens form part of the machinery for the collection of federal taxes . . . . However,

when Congress resorted to the use of liens, it came into an area of complex property relationships long since settled and regulated by state law. . . . We think it more harmonious with the tenets of our federal system and more consistent with what Congress has already done in this area, not to inject ourselves into the network of competing private property interests, by displacing well-established state procedures governing their enforcement, or superimposing on them a new federal rule." At 241–242.

Congress has not seen fit to change the rules this Court fashioned in these cases. Indeed, it has not only permitted them to stand but, as was said in *Holden* v. *Stratton*, 198 U. S. 202, 213–214 (1905), "It has always been the policy of Congress, both in general legislation and in bankrupt acts, to recognize and give effect to the state exemption laws." There are many examples, among which is the incorporation in the bankruptcy law of the exemptions made available by the State of a bankrupt's domicile. See 52 Stat. 847, 11 U. S. C. § 24. This includes the exemption of life insurance proceeds. See *Holden* v. *Stratton, supra,* at 212–213. In addition, other exemptions have been added from time to time, such as the exclusion from taxation of the benefits from life insurance policies, Internal Revenue Code of 1954, § 101 (a), and the exception of life insurance benefits in which the surviving spouse has exclusive power of appointment from the rule that terminal interests may not qualify for the marital deduction, Internal Revenue Code of 1954, § 2056 (b) (6).

We cannot overlook this long-established policy. In the absence of a definitive statutory rule to the contrary we therefore adopt the state rule and refuse to extend the equitable doctrine of marshaling assets to this situation. New York has a specific statute which exempts insurance benefits of a widow from the claim of creditors of her hus-

band's estate and its courts have refused to marshal assets where to do so will diminish those rights. *Bruns* v. *First Trust & Deposit Co., supra.* To apply marshaling in this case would overturn New York's beneficent policy and, in addition, would enlarge the federal tax lien that the Congress has provided in § 3670. This we will not do. The judgment is therefore

*Reversed.*

MR. JUSTICE WHITE, with whom MR. JUSTICE HARLAN and MR. JUSTICE STEWART concur, dissenting.

I cannot for several reasons join the Court in reversing the decision of the Court of Appeals.

1. It is, of course, federal law which should rule this case. We are dealing here with a federal income tax lien, created by congressional enactment. Problems of interpretation under that legislation are federal problems, and should be governed as nearly as may be, by principles of uniform application throughout the various States. Determining the priority of § 3670 liens by reference to state law may permit the United States to assert its lien in one State but forbid it in another in precisely the same circumstances.

The very proposition upon which the Court's decision seems to rest—that the Government's lien under § 3670 depends on whether state law recognizes similar liens asserted by private creditors—was rejected in *United States* v. *Bess,* 357 U. S. 51, where it was argued that the United States had no claim against the cash surrender value of insurance policies because a New Jersey statute barred the similar claims of private creditors. This Court looked to local law to determine whether the taxpayer had "sufficient interests . . . to satisfy the requirements of § 3670" but declared state law "inoperative to prevent the attachment of liens created by federal statutes in favor of the United States. . . . The fact that in § 3691 Congress

provided specific exemptions from distraint is evidence that Congress did not intend to recognize further exemptions which would prevent attachment of liens under § 3670."

The basic principle in *Bess* was further amplified by *Aquilino* v. *United States*, 363 U. S. 509, and *United States* v. *Durham Lumber Co.*, 363 U. S. 522, where the following guidelines were laid down:

> "[A]s we held only two Terms ago, Section 3670 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law . . . .' *United States* v. *Bess*, 357 U. S. 51, 55. However, once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.' [Citing cases in this Court.] The application of state law in ascertaining the taxpayer's property rights and of federal law in reconciling the claims of competing lienors is based both upon logic and sound legal principles. This approach strikes a proper balance between the legitimate and traditional interest which the State has in creating and defining the property interest of its citizens, and the necessity for a uniform administration of the federal revenue statutes." 363 U. S., at 513–514.

Undoubtedly the deceased taxpayer here possessed property—the cash surrender value of insurance policies—to which the tax lien attached by the force of federal law. The problem remaining is the reconciliation of the competing claims to the proceeds. Under *Bess, Aquilino* and *Durham* the problem must be solved as a matter of federal law. State law may be one of the sources guiding the formation of federal policy, but according to prior

cases in this Court, it is not controlling and does not have the compelling force given it by the Court.

2. Whatever force local law is to have, however, I find it difficult to accept the Court's exposition of New York policy.

Section 166 of the New York Insurance Law, the Court says, protects insurance benefits from the claims of creditors of the deceased insured. Obviously, however, no part of the proceeds of the policy, whether cash surrender value or otherwise, is protected from the claims of the secured creditor who has taken an assignment of the policy as collateral security during the lifetime of the insured. This is apparent from the face of the statute itself,[1] and in this very case no question has been raised about the rights of the bank, surely a creditor, to collect every dollar owed to it from the proceeds of the policy. Likewise, had there been no bank loan here, or had it been paid by the insured prior to his death, it is conceded that the federal tax lien would be satisfied from the proceeds to the extent of the cash surrender value. In fact, the beneficiary in this case paid over to the United States the portion of the cash surrender value remaining after the debt of the bank had been paid.

New York, therefore, cannot be said to have a policy of insulating the proceeds of insurance policies from the claims of creditors who have acquired a security interest in the proceeds during the lifetime of the insured. The insured in this case, the owner of the policy, could change the beneficiary and destroy the latter's interest entirely. He could likewise encumber the proceeds and limit the beneficiary's rights to the net amount remaining after the payment of creditors with liens on the proceeds. The protected interest of the beneficiary extends only to the

---

[1] Section 166 is quoted in part in the footnote to the Court's opinion. It obviously protects assignees, even creditor-assignees, from the other creditors of the insured.

net proceeds. *In re Kelley's Estate,* 251 App. Div. 847, 296 N. Y. Supp. 923. The beneficiary has an unsecured claim, inferior to that of encumbrancers, but good as against unsecured creditors of the insured. This is what the New York policy is, as it seems to me.

Neither is there anything in *Bruns* v. *First Trust & Deposit Co.,* 250 App. Div. 370, 295 N. Y. Supp. 412, which validates the Court's definition of New York policy. In that case a bank held both insurance policies and other property as collateral security for debts owed it by the insured. The Appellate Division refused to permit collection of the bank loan from the insurance proceeds in order that unsecured creditors could resort to the other property held by the bank. The case prefers the beneficiary to the unsecured creditor who has no independent claim to the proceeds, but it does not suggest that those with security interests in the proceeds would be likewise subordinated.

Moreover, further question about New York policy is raised by *In re Kelley's Estate, supra,* a case which is difficult to reconcile with *Bruns.* In that case, as in *Bruns,* the insured had assigned a policy and had pledged shares of stock as security for a bank loan. Upon his death the bank was paid from the insurance proceeds and the stock remained available to the executor and the insured's estate. The Appellate Division apparently saw nothing wrong with such an application of the insurance proceeds, denied that the widow had any interest in them to the extent they were necessary to pay the bank loan and further denied the widow's claim to be subrogated to the bank's rights in the stock.[2]

---

[2] "When the husband executed his certificate on August 15, 1932, revoking the designation of his wife as the absolute beneficiary and redesignating her as beneficiary subject to the assignment to the Manufacturers Trust Company, he thereby diminished her interest in the policy *pro tanto* and, in effect, constituted the trust company the primary beneficiary to the extent necessary to satisfy its loan

Twice—in this case and in *United States* v. *Behrens*, 230 F. 2d 504 (C. A. 2d Cir.)—the Court of Appeals has ordered payment of both the lien of a bank and the inferior federal tax lien. In neither case did it indicate it was trenching upon an established state policy involving marshaling of assets. If the result is to depend upon state policy, which at the very least is shrouded in doubt and which it seems to me is not what the Court says it is, I would follow our usual custom [3] of leaving to the Court of Appeals the ascertainment of the local law in which it specializes.[4] Pitching the result upon state law, even as a guide to the governing federal law, should lead to a remand rather than to decision here.

3. The deceased made the assignment to the bank in 1943. Deficiencies in federal income taxes for the years 1945 and 1946 were assessed on May 22, 1946, and June 17, 1947, respectively. Partial payments were made upon the 1945 assessments, none on the 1946. The deceased in 1951 extended the time for collection of the 1945 de-

---

to him and appellant, the secondary beneficiary, as to any residue which may remain. Under section 52 of the Domestic Relations Law and section 55-a of the Insurance Law, the wife may acquire a vested irrevocable right to the proceeds of the policy, free from the claims of the husband's creditors and representatives, only if the husband die without exercising his reserved right to change the beneficiary in accordance with the provisions of the policy. Here the husband exercised that right to the extent necessary to satisfy his loan. Hence, when the trust company applied the proceeds of the policy to the payment of the loan, it was not utilizing appellant's property and she could not be subrogated to the rights of the bank with respect to the stock of the Fairview Foundry Incorporated." *In re Kelley's Estate*, 251 App. Div. 847–848, 296 N. Y. Supp. 923–924.

[3] *United States* v. *Durham Lumber Co.*, 363 U. S. 522, 526–527; *Propper* v. *Clark*, 337 U. S. 472, 486–487.

[4] The Court of Appeals has frequently dealt with § 166 of the New York Insurance Law. See for example *Fried* v. *New York Life Ins. Co.*, 241 F. 2d 504; *United States* v. *Behrens*, 230 F. 2d 504, cert. denied, 351 U. S. 919; *Rowen* v. *Commissioner*, 215 F. 2d 641.

ficiencies until 1956 and of the 1946 deficiency until 1957. He submitted an offer of compromise in 1955 which was rejected by the Government in May of that year. Notice of tax lien was filed in July 1955, and the deceased died the following December. At that time the cash surrender value of the policies had grown to $27,285.87 and the amount due on the bank loans totaled $26,844.66. The insurance company remitted the amount of the loans to the bank and paid the remainder of the proceeds to the named beneficiary of the policies. There are no facts or findings to indicate that the amount paid to the bank by the insurance company was paid from the cash surrender value. In these circumstances I see no reason for assuming that it was and no basis for forbidding collection of the tax lien from the amounts paid the beneficiary.

The deceased first reduced the beneficiary's interest in the proceeds of the policies by making the assignment to the bank. He then allowed another lien to attach by his own default, thereby further invading the proceeds. Where there is no prior assignment, it is clear that the government lien effectively diminishes the proceeds in the hands of the beneficiary since the Government's interest in the proceeds is superior to that of the beneficiary. It is unsound to hold, as the Court does, that the lien may not have like effect when the insured has given a prior lien on the proceeds to secure a bank loan. True, paying the tax lien from the cash surrender value results in the bank's being paid from the remainder. But this is precisely what the insured arranged for since the loan, by its very terms, was collectible from any part of the proceeds, which were more than sufficient to pay both the loan and government lien.[5]

---

[5] Where the tax lien is inferior to local lien A but superior to local lien B, the tax lien is to be paid even though lien A, superior to the federal lien, is cut out because under local law it is inferior to lien B. *United States* v. *Buffalo Savings Bank,* 371 U. S. 228; *United States*

Nor is there any superior equity in the beneficiary to prevent the application of the well-established rule of marshaling, a rule long recognized by this Court.[6] It is not unreasonable to suppose that the beneficiary enjoyed the benefits of the bank loan which is here used to insulate the cash surrender value from the government lien. What is more, the insured and his family used and spent the income which should have been used to pay federal taxes which had been due and payable for many years. Paying both the bank and the tax lien from the proceeds is wholly consistent with the arrangements made by the insured and with this Court's holding in *Bess*.

Finally, the federal revenue deserves more protection than it receives today. The Court may now protect a widow, but the rule announced will protect all beneficiaries, varied as they may be.[7] Congress has declared that the United States shall have a lien on the assets of those persons who do not discharge their federal tax obli-

---

v. *City of New Britain*, 347 U. S. 81. In the case at bar there is more reason to recognize and pay the tax lien; for if it is paid, it is only an inferior interest, that of the beneficiary, which is invaded.

[6] "The equitable doctrine of marshalling rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." *Sowell* v. *Federal Reserve Bank*, 268 U. S. 449, 456–457. See also *Merrill* v. *National Bank of Jacksonville*, 173 U. S. 131, 138; *Scruggs* v. *Memphis & Charleston R. Co.*, 108 U. S. 368; *Savings Bank* v. *Creswell*, 100 U. S. 630, 641; *Fenwick* v. *Chapman*, 9 Pet. 461, 474; 2 Story's Equity Jurisprudence, §§ 758, 760, 853–871; 2 Pomeroy's Equity Jurisprudence, §§ 396, 410; 4 Pomeroy's Equity Jurisprudence, § 1414.

[7] Since § 166 would not protect the insurance proceeds from creditors' claims where the insured or his estate is the beneficiary, I would suppose the Court's opinion would likewise permit payment of the tax lien in such circumstances. Would the same apply to where the executor or administrator is the beneficiary? And what is the result when the beneficiary is the insured's partner or business associate, or a corporation in which he has an interest?

gations. This Court now creates an exception to that policy by holding that the tax lien may not be paid from the cash surrender value of the insurance policy, solely because prior to the attachment of the tax lien Mr. Meyer had assigned the entire proceeds as collateral for a bank loan. I would not invite or validate the utilization of continuing and growing bank loans for the sole purpose of insulating insurance proceeds from the federal tax lien which otherwise would be satisfied from the policy proceeds.

There are in this case two secured creditors and two funds. The total assets are sufficient to satisfy the claims of both creditors, but the junior claimant has a lien on only one of the funds. It is entirely appropriate here to require the payment of both liens.

For the foregoing reasons, I respectfully dissent.