**FIRST NATIONAL CITY BANK,**
**Plaintiff,**

**v.**

**PHOENIX MUTUAL LIFE INSURANCE**
**CO. and Helen C. Gilmartin,**
**Defendants.**

**PHOENIX MUTUAL LIFE INSURANCE**
**CO., Defendant and Interpleading**
**Plaintiff,**

**v.**

**UNITED STATES of America,**
**Interpleaded Defendant.**

**No. 70 Civ. 5703.**

United States District Court,
S. D. New York.

Sept. 25, 1973.

Thomas C. Platt, Bleakley, Platt, Schmidt & Fritz, New York City, for Phoenix Mutual Life Ins. Co.

John P. Dunne, Molloy, Fletcher & Dunne, Manhasset, N. Y., for Helen C. Gilmartin.

Edward Harris Heller, Weisman, Celler, Allan, Spett & Sheinberg, New York City, for First National City Bank.

Whitney North Seymour, New York City, (Joseph Danas), New York City, for United States of America.

## OPINION

EDELSTEIN, Chief Judge:

Plaintiff, First National City Bank ("Bank"), has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in this action to recover the proceeds of policies of life insurance which became payable to it upon the death of Robert D. Gilmartin, the insured. The interpleaded defendant, the United States, has submitted a cross-motion for summary judgment seeking to recover a portion of those proceeds in satisfaction of a tax lien filed against Mr. Gilmartin before his death.

The Court has reviewed the record in this case and has found that there is no genuine issue as to any material fact. Accordingly, this is an appropriate case for summary judgment. The facts can be summarized as follows: In 1967 Robert D. Gilmartin assigned four policies of insurance on his life (three of which were issued by Phoenix Mutual Life Insurance Co., the interpleading plaintiff), each of which named his wife Helen R. Gilmartin as beneficiary, to the plaintiff Bank, as collateral security pursuant to his written guaranty of the obligations of his corporation, Kalflex, Inc. As further collateral, he executed a second mortgage on his residence. Fifteen months later, the United States filed a tax lien against Gilmartin for approximately $14,000; this lien was filed with Phoenix.

In July, 1970, Gilmartin died. At the time of his death, Gilmartin, as guarantor for Kalflex, Inc., was indebted to the Bank in the amount of $28,000. This amount was reduced to approximately $12,000 by the Bank's receipt of the proceeds of the one insurance policy not issued by Phoenix.

The Bank demanded from Phoenix payment of the amounts still owed it. Phoenix refused to make the payment unless the Bank obtained a release of the tax lien. The Bank then brought suit in the Supreme Court of the State of New York for payment in the amount of the proceeds of the three policies.[1] Phoenix interpleaded the United States

1. The assignment agreement provided that the Bank should receive all the proceeds on the death of Mr. Gilmartin and after satisfying the debt, pay any excess to Mrs. Gilmartin, the named beneficiary.

and the United States removed the case to the Southern District pursuant to 28 U.S.C. §§ 2410(a),[2] 1441(c),[3] and 1444 (1970).[4] Phoenix deposited the proceeds into the court and from the fund was granted compensation for its attorneys' fees and disbursements. The remainder of the fund totals about $18,000; the cash surrender value of the policies, conceded by all parties to be the maximum amount recoverable by the Government under United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L. Ed.2d 1135 (1958), was $9850.

The Bank moved for summary judgment. The United States agreed that there were no material issues of fact in dispute and filed a cross-motion for summary judgment. Mrs. Gilmartin was joined as a party-defendant and has filed a memorandum of law.

The issue of law before this Court is applicability of the equitable doctrine of marshaling of assets to this case. That doctrine has been described by the Supreme Court as "the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." Sowell v. Federal Reserve Bank, 268 U.S. 449, 456–457, 45 S.Ct.

528, 530, 69 L.Ed. 1041 (1925). On the basis of this doctrine, the Government argues that the Bank, which is able to satisfy its claim from either the insurance proceeds or the second mortgage,[5] shall be compelled to resort to the mortgage, leaving the insurance proceeds for the United States, which has no other source from which to satisfy its claim.

The Government's contention must be rejected on the basis of the reasoning of the Supreme Court in Meyer v. United States, 375 U.S. 233, 84 S.Ct. 318, 11 L. Ed.2d 293 (1963). In *Meyer* the insured owned policies on his life for the benefit of his wife and assigned them to a bank as collateral security for repayment of a loan. Subsequently, the Internal Revenue Service assessed against the insured deficiencies covering income taxes due from him and filed notice of a tax lien. Upon the death of the insured, the insurance company paid the full amount of the loan to the bank and the remaining balance of the proceeds to his wife. The United States sued the petitioner-wife for recovery of the taxes due from the insured. Petitioner in *Meyer* argued that the proceeds in excess of the cash surrender value of the policies were exempt under N.Y.Ins. Law § 166 (McKinney's Consol.Laws, c. 28, 1966).[6] The District Court granted

2. This section provides as follows:
    (a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—
    (1) to quiet title to,
    (2) to foreclose a mortgage or other lien upon,
    (3) to partition,
    (4) to condemn, or
    (5) of interpleader or in the nature of interpleader with respect to, real or personal property on which the United States has or claims a mortgage or other lien.

3. This section provides as follows:
    (c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case

may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction.

4. This section provides as follows:
    Any action brought under section 2410 of this title against the United States in any State court may be removed by the United States to the district court of the United States for the district and division in which the action is pending.

5. It is conceded that the Government has no claim to the residence, of which Mrs. Gilmartin became the sole owner at her husband's death. The mortgage was signed by both Mr. and Mrs. Gilmartin as tenants by the entirety. Accordingly, Mr. Gilmartin's death did not impair the Bank's right to foreclose.

6. This section provides as follows:
    1. If any policy of insurance has been or shall be effected by any person on his own life in favor of a third person beneficiary,

summary judgment for the Government on the theory that the tax lien could be satisfied out of that portion of the proceeds that represented the cash surrender value by marshaling the funds and paying the bank's claim from the remainder of the proceeds. The Supreme Court reversed, holding the equitable doctrine of marshaling of assets inapplicable to assets exempted by state law from levy by creditors. Accordingly, the doctrine could not be applied when its effect was to invade the proceeds made exempt under Insurance Law § 166.

The language of the Court in *Meyer* is particularly appropriate to the case at hand. The Court, in discussing the doctrine of marshaling of assets, said:

> In considering the relevance of the doctrine here it is well to remember that marshaling is not bottomed on the law of contracts or liens. It is founded instead in equity, being designed to promote fair dealing and justice. . . . It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties. . . . Federal courts have likewise [with state courts] accepted this principle of the nonapplicability of the doctrine where, as here, one of the funds is exempt under state law. Meyer v. United States, at 237–238, 84 S.Ct., at 321.

■ Marshaling of the assets in the instant case would violate both the specific holding of Meyer v. United States and the above-quoted Supreme Court guidelines for applying the doctrine. Application of the doctrine here would force the bank to foreclose the mortgage on the Gilmartin home if it is to satisfy the debt and would allow it to claim the balance of the life insurance proceeds in excess of the cash surrender value of the policies. The reduction in the total amount of life insurance proceeds available to Mrs. Gilmartin, caused by application of the doctrine, is identical to the situation in *Meyer* and is precluded by the holding in that case. A result which would essentially compel foreclosure of the mortgage constitutes an invasion of the concept of tenancy by the entirety and is inconsistent with the language of *Meyer*. The concept of tenancy by the entirety was well known to the common law and it has been made an integral part of New York statutory law.[7] Essential to the concept of tenancy by the entirety is the principle that an encumbrance incurred by one tenant may not operate to impair the right of survivorship of the cotenant. 2 American Law of Property 29 (Casner, ed. 1952). The effect of applying the doctrine of marshaling the assets in this case is to allow the tax lien incurred by Mr. Gilmartin to defeat Mrs. Gilmartin's right of survivorship. Such a result is not, in the words of the Supreme Court guidelines, "designed to promote justice" nor is it relief that "can be equitably fashioned as to all of the parties."

■ The Government has argued that *Meyer* is inapplicable as precedent because the *Meyer* case involved only one fund, the insurance proceeds, whereas in the instant case two distinct funds are available to the Bank. However, this Court reads *Meyer* to stand for the proposition that marshaling of assets will not be compelled when its effect is to contravene an established state policy of protection for one of the funds. Because of its age and fundamental nature, the concept of tenancy by the entirety is analogous to the insurance law exemp-

---

or made payable, by assignment, change of beneficiary or otherwise, to a third person, such third person beneficiary, assignee or payee shall be entitled to the proceeds and avails of such policy as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts of the person effecting the insurance . . . . .

7. N.Y.Est., Powers & Trusts Law § 6–2.2 (b) (McKinney's Consol.Laws, c. 17–b, 1967) provides that:

(b) A disposition of real property to a husband and wife creates in them a tenancy by the entirety, unless expressly declared to be a joint tenancy or a tenancy in common.

tion which provided the basis of the holding in *Meyer*. It is also similar to the other exemptions—homestead and head of the household—discussed by the Court in *Meyer*. Just as the Supreme Court held that marshaling of the assets cannot be applied when its effect is to defeat the policy embodied in a state exemption statute, this Court holds that the doctrine cannot be applied when its effect is to defeat a tenancy by the entirety.

Accordingly, the Government's motion for summary judgment will be denied and the motion of the plaintiff Bank granted. Gilmartin's obligation to the Bank will be satisfied from the insurance proceeds. Any excess proceeds will go to Mrs. Gilmartin and, upon satisfaction of the debt, the mortgage will be released.

Settle order on notice.