**In re Patricia AHERN, William Ahern, Veronica Ahern, Debtors.**

**Bankruptcy No. 82–250.**

United States Bankruptcy Court, D. New Hampshire.

June 25, 1984.

---

Albert Weeks, Keene, N.H., for Ashuelot Nat. Bank.

Thomas P. Connair, Claremont, N.H., for L.F. Trottier and Sons, Inc.

John R. Michels, Londonderry, N.H., Trustee.

Patricia, William and Veronica Ahern, debtors, pro se.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This case came before the court for a hearing on April 2, 1984 upon the Motions to Dismiss this Chapter 11 proceeding filed by Ashuelot National Bank and L.F. Trottier and Sons, Inc., secured creditors, and upon a number of complaints seeking relief from the automatic stay filed by those creditors, and by various additional creditors, in separate adversary proceedings in this case.

At the conclusion of the April 2, 1984 hearing the court continued all motions for thirty days to give the debtors a chance to file a revised Chapter 11 plan of reorganization that could be confirmed under the provisions of Chapter 11 of the Bankruptcy Code.

The debtors did file a revised plan on April 28, 1984, and a continued hearing was held before the court on May 3, 1984. The creditors contend that the revised plan still could not be confirmed by the court and is nothing but a further attempt to thwart and delay them in the exercise of their lawful rights.

To consider and act on this matter the undersigned judge, who had his first exposure to this case at the April 2, 1984 hearing, has had to review and consider not only the testimony and evidence received at the aforesaid hearings, but has also been obliged to review the entire record in this case and in all adversary files relating thereto.

The debtors filed their Chapter 11 petition with this court on May 3, 1982. They operate a farm property known as "Great Meadows Farms" in Charlestown, Sullivan County, New Hampshire. The schedules filed by the debtors on June 1, 1982 list taxes owing of $9,300.00; secured claims of $177,900.00; and unsecured claims of $34,950.00—for total scheduled liabilities of $222,150.00. The same schedules list real property assets at fair market value of $701,000.00; farming supplies and implements of $20,800.00; and claims against others of $5,150.00—for total scheduled assets of $726,950.00.

Based upon the decided degree of solvency set forth by the debtor in the schedules, it should have been possible to formulate a successful plan of reorganization quickly in this case. The actual result, however, has been just the opposite. The case has dragged on through a series of plans and continued hearings before the prior bankruptcy judge, with the debtors having discharged their attorneys on several occasions immediately prior to scheduled hearings. The delay has not been based upon any serious economic problems the debtors would have in fashioning a normal plan of reorganization but rather upon their adamant refusal to accept the results of certain pre-bankruptcy litigation that they had in the state courts with several of their secured creditors. In effect they are seeking to relitigate in this court, in various adversary proceedings contemplated to con-

tinue under the revised plan of reorganization, a number of issues litigated with *res judicata* effect in the state courts up to and including the Supreme Court of New Hampshire.

The debtor's controversy with the Ashuelot National Bank started back in September 1975 when the Bank filed suit against the debtors and received and recorded a writ of attachment on their real estate in the amount of $15,000.00. The Bank obtained a judgment in the amount of its $12,500.00 debt, but for various reasons the Bank was not able to have the sheriff schedule a sale of the property until May 4, 1982, the day before the debtor's Chapter 11 petition was filed. The Bank's secured debt at this point, with accrued interest, is in excess of $16,500.00.

The debtor's other key controversy was with a creditor named William F. Tempel who obtained a final judgment against them in the Sullivan County Court on March 10, 1980, which judgment was ultimately affirmed by the New Hampshire Supreme Court on December 2, 1980. The 1980 judgment was in the amount of $64,979.04, and now totals in excess of $81,000.00 with accrued interest. The judgment was entered upon Tempel's claim that he suffered a deficiency after foreclosing earlier upon certain collateral he had for his debt. The debtors contended that he received full payment by virtue of the prior property foreclosed, and that accordingly he had no remaining claim against them. The debtors lost that battle in the state courts long before this Chapter 11 proceeding was commenced.

The debtors have not directly disputed the $12,500.00 debt that was owing to Ashuelot National Bank but have resisted payment on that claim based on various allegations that the Bank interfered with their business operations and upon their realization on other assets. The debtors also contend, as set forth in a separate adversary proceeding in this case, that the Asheulot Bank should not be paid on its secured debt until it first seeks payment out of the assets foreclosed and now possessed by Tempel, inasmuch as Tempel held only a second

lien on those assets, inferior to the Bank's first lien.

■ This novel attempt to use the "marshaling" doctrine to benefit the debtors, as opposed to a true marshaling of collateral between lienholders, has received no support in either the state or federal courts. *Lessard v. Darker,* 94 N.H. 209, 49 A.2d 814 (1946); *Meyer v. United States,* 375 U.S. 233, 236, 84 S.Ct. 318, 320, 11 L.Ed.2d 293 (1963). Moreover, the doctrine is never applied when to do so would unduly delay or cause increased expenses to the senior creditor. *In re United Retail Corporation,* 33 B.R. 150, 8 CBC 2d 600, 604, (D.Hawaii 1983).

The debtors through their then-counsel filed a plan of reorganization in this proceeding in November of 1982. However, when the plan came before the court on a hearing on the proposed disclosure statement on June 21, 1983, the debtors advised the court that they had discharged their counsel and had never authorized the plan that was filed notwithstanding their signing the same. At the conclusion of the June 21, 1983 hearing, Judge Betley continued the matter until July 19, 1983 to give the debtors an opportunity to obtain new counsel and to file an amended plan. The court noted at several points during the course of the June 21, 1983 hearing that the debtors had established a pattern of discharging their lawyers prior to scheduled hearings in the state courts—thus obtaining various continuances and delays during the 1977–1982 period—and that the Bankruptcy Court would tolerate no further such delays but nevertheless would give the debtors the opportunity to obtain new counsel and proceed with an amended plan.

At the hearing on July 19, 1983, the debtors had not obtained new counsel and had not filed an amended plan. Accordingly, the court entered an order on July 20, 1983 authorizing the appointment of a Chapter 11 trustee and including the following findings:

"At the July 19, 1983 hearing, the debtor appeared without counsel and

launched into a long diatribe with the court concerning collusion between counsel for the secured creditors and various state courts which had heard prior cases concerning the debtor and the secured creditors over the past ten years."

"This court informed the debtor that judgments entered by competent state courts were entitled to res judicata effect here. The court further informed the debtor on two occasions that if she continued to insult the integrity of the state courts it would find her in contempt."

"The court is of the opinion that it is impossible to continue this case in the posture of a Chapter 11 with Patricia Ahern in control. The court feels that a trustee could take control of this case and continue to pursue the plan of reorganization."

The debtors appealed the order of July 20, 1983 but their appeal was subsequently dismissed, for failure to prosecute the same, by order of the District Court entered November 1, 1983.

The secured creditors continued to press their motions for relief from the automatic stay, and their motions to dismiss the Chapter 11 proceedings, after the dismissal of the appeal. The Chapter 11 trustee tried to formulate a new plan of reorganization agreeable to the debtors but concluded that the debtors would not consider any plan which would liquidate any of their assets to fund the same.

At the time of the April 2, 1984 hearing no amended plan had been filed and the debtors had not obtained new counsel. At the conclusion of the hearing, the court advised the debtors that in view of the substantial excess of assets over liabilities the court could not confirm any plan that was not "in the best interest of the creditors" in that context. Under Section 1129(a)(7) of the Code, a Chapter 11 plan cannot be confirmed over objection of creditors unless the creditors:

"... will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date."

*See In re Featherworks Corp.*, 25 B.R. 634, 9 B.C.D. 1320 (E.D.N.Y.1982).

Since the plan before the court did not provide for any immediate cash distribution to creditors, but instead provided for their pay-out over a long extended period of time, it was obvious that their best interest would be better served by immediate liquidation and full payment upon their claims. Accordingly, the court advised the debtors that it would give them one final chance to amend their plan appropriately and scheduled a further hearing on any amended plan on February 3, 1984.

The revised plan filed by the debtors on April 28, 1984 does not make any significant changes in the defects noted by the court with regard to the prior plan. Basically, the revised plan provides for pay-out of the various classes of creditors over a period ranging from one to six years with interest rates ranging from eight to ten percent. The accompanying disclosure statement filed by the debtors lists administrative expense of $1,000.00; secured claims totaling $146,000.00; and unsecured claims of $40,000.00. The statement lists assets including land, timber, and buildings at $700,000.00; farm machinery and equipment of $25,000.00; vehicles of $3,000.00; and saw mill equipment of $9,000.00. Thus, total listed debt at the present time is given as $187,000.00 and total assets are stated at $737,000.00.

While it can be assumed that the market values of the real estate listed by the debtors would not be fully realized in liquidation sales, it does not appear that any reduction in realizable values would be sufficient to jeopardize a full pay-out of the creditors in the event of liquidation. Moreover, if the debtors can in fact establish that they realistically can operate and realize the net incomes projected in their plan, it would appear that they also should be able to obtain refinancing upon their otherwise unencumbered assets to fund an immediate pay-out plan for their creditors.

The debtors do not propose to infuse any new capital into the funding of the plan of reorganization or engage in any refinancing based upon their extensive assets. Instead, all payments are contemplated to be made out of projected farming and logging operations. The debtors conceded at the hearing that they had no real track-record in terms of logging to support the crucial projections on the proposed logging operation, but argue that their failure to mount an extensive logging operation during the course of these proceedings was caused by "interference" by various creditors and relatives. The court notes in this regard that this contention was made earlier in the proceedings and Judge Betley entered an order on August 10, 1982 clearly authorizing timbering operations by the debtor-in-possession.

Although the debtors were given an opportunity at the recent hearings to put forth evidence of specific instances of any such interference no credible evidence was received. The court therefore concludes that the allegations of "interference" with regard to the timbering or logging operation are simply one more tactic of delay and confusion adopted by the debtors in these proceedings. There is no substantial evidence before the court to support a finding that the projected logging operations could in fact be accomplished in a manner sufficient to produce the net income necessary to fund the plan of reorganization.

■ It appears from all of the foregoing that the revised plan of reorganization put forth by the debtors in this case could not be confirmed by the court pursuant to the standards set forth in Section 1129 of the Bankruptcy Code, and accordingly it would be a futile act to proceed further with the plan procedures contemplated under Chapter 11 of the Code. The record also establishes cause for dismissal under Section 1112 of the Code in terms of inability to effectuate a plan and unreasonable delay to creditors.

The court noted at the conclusion of the April 2, 1984 hearing that it would be tragic if the debtors did not avail themselves of the final opportunity being given them to come up with a realistic plan of reorganization involving some liquidation or refinancing of their extensive assets to pay off their debts in an orderly fashion. Unfortunately, they have instead chosen once again to try to relitigate long-settled issues in a new forum.

The debtors have insisted loudly and often in these proceedings that they demand "their rights" under the Bankruptcy Code. However, the record in this case establishes that they have been given all possible opportunities to adjust their debts and that any further continuance of this proceeding, further delaying creditors who have been already stalled in some instances up to ten years in obtaining payments on their debts, would amount to an abuse of the Chapter 11 process. Cf. *Furness v. Lilienfield*, 35 B.R. 1006 (D.Md.1983). Accordingly, an order will be entered dismissing this Chapter 11 proceeding and rendering moot all adversary matters in the case.