**In re Roy W. TALMO, Debtor.**

**Bankruptcy No. 93–32745–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida.

Feb. 13, 1996.

W. Scott Callahan, Frith, Stump, Storey & Callahan, P.A., Orlando, Florida, for Reliant.

Robert N. Gilbert, Carlton Fields, Ward, Emmanuel, Smith & Cutler, P.A., West Palm Beach, Florida, and Lawrence Teiger, Federal Deposit Insurance Corporation, Atlanta, Georgia, for FDIC.

Paul McMahon, Schulte, Blum, McMahon & Joblove, Miami, Florida, for CitiBank and Blackhawk.

Arthur Halsey Rice, Arthur Halsey Rice & Associates, Miami, Florida, for Trustee.

Kenneth Welt, Trustee, Hollywood, Florida.

## MEMORANDUM OPINION AND ORDER GRANTING RELIANT'S MOTION TO MARSHAL ASSETS

ROBERT A. MARK, Bankruptcy Judge.

The Court conducted a hearing on December 5, 1995, on The Reliant Group Limited Partnership's ("Reliant") Motion to Apply the Doctrine of Marshaling of Assets Against the FDIC, as Receiver for First American Bank and Trust as to the Rents and Profits Held by the Trustee and to Transfer Lien and to Require Disbursements of Funds ("Marshaling Motion"). After consideration of the record, the arguments of counsel and review of applicable case law, the Court finds that Reliant is entitled to relief and the Marshaling Motion will be granted.

### FACTS

At the commencement of this Chapter 11 case, the assets of the estate included a 145 acre parcel of real property owned by the Debtor (the "145 Acres"). The 145 Acres were subject to a judgment lien in excess of $1.3 million in favor of the Resolution Trust

Corporation, as Receiver for American Pioneer Federal Savings Bank (the "RTC"), which was junior to a first mortgage on the property in favor of the FDIC, as Receiver for First American Bank and Trust (the "FDIC"). The FDIC's mortgage also encumbered all rents and profits generated from the 145 Acres. The RTC's judgment lien did not attach to the rents.

This case was converted to a Chapter 7 on November 10, 1994. With Court approval, the Trustee sold the 145 Acres in March, 1995, netting $1,851,430.65 after expenses of sale. Reliant obtained the RTC judgment and judgment lien from the RTC shortly after approval of the sale, by assignment dated March 5, 1995. The amount paid by Reliant to obtain an assignment of the RTC judgment was not disclosed.

The sale proceeds were used to satisfy all principal and interest due the FDIC, which totaled $1,811,050.90. The FDIC's remaining unresolved claim for attorneys fees was secured by both the sale proceeds held by the Trustee and by $90,000 in rents (the "Rents") collected by the Trustee from a lease of the property.

By order entered August 17, 1995 the Court awarded the FDIC $89,500 in attorneys fees and costs. The order directed the Trustee to pay the award from the sale proceeds. However, in recognition of Reliant's stated intention to seek a marshaling order, the order provided that "Payment [of the FDIC's fees] from the sale proceeds is without prejudice to a reallocation ... if, upon motion, the FDIC is ordered to marshal any portion of its claim against other assets which secure the FDIC's claim."

The FDIC has now been paid in full. The receipts and disbursements from the sale proceeds, and rents are summarized as follows: [1]

| | |
|---|---|
| Net Proceeds to Estate from Sale of 145 Acre Parcel | $1,851,430.65 |
| Rents from Tenant | 90,000.00 |
| TOTAL PROCEEDS PLUS RENTS | $1,941,430.65 |
| Less Payment to FDIC (Principal and Interest) | 1,811,050.90 |
| Less Payment to FDIC for attorneys fees and costs (paid first from remaining sale proceeds and balance from Rents) | 89,500.00 |
| REMAINING RENT PROCEEDS SUBJECT TO RELIANT'S MARSHALING MOTION | $ 40,879.75 |

If the Marshaling Motion is denied, the remaining funds are unencumbered and thus potentially available for distribution to unsecured creditors of this estate.[2]

In the Marshaling Motion, Reliant argues that the FDIC should have been paid first from the Rents and then the balance of its claim from the 145 Acre sale proceeds, thereby leaving the balance of the sale proceeds to be used towards payment of the Reliant judgment lien. Since the sale proceeds have already been distributed, the relief sought in the Marshaling Motion is to pay the remaining Rents directly to Reliant in substitution for the sale proceeds it would have received if the FDIC had first looked to the Rents in payment of its claim.

The FDIC does not object to the relief sought by Reliant. Objections were raised to the motion by counsel for two unsecured creditors. The primary objection was presented in argument by counsel for the Trustee.

## DISCUSSION

The equitable doctrine of marshaling "rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds." *Meyer v. United States*, 375

1. These numbers are from a revised accounting presented by the Trustee at a further hearing conducted on February 13, 1996. The amounts differ from the amounts described in the Marshaling Motion but represent the actual receipts and disbursements by the Trustee.

2. The funds are subject to surcharge by the Trustee. By Order entered July 31, 1995, the Court granted the Trustee's motion to surcharge Reliant for fees and costs incurred in selling the 145 Acres. The order reserved ruling on the amount of the surcharge.

U.S. 233, 236, 84 S.Ct. 318, 321, 11 L.Ed.2d 293 (1963); *All American Holding Corp. v. Elgin State Bank,* 17 B.R. 926, 928 (S.D.Fla. 1982).

■ The elements generally required to invoke the doctrine of marshaling are (i) two creditors of the same debtor; (ii) two or more funds belonging to that debtor; and (iii) one creditor with the right to resort to both funds with the other creditor having rights against only one. *In re West Coast Optical Instruments, Inc.,* 177 B.R. 720, 721 (M.D.Fla.1992), *citing Meyer v. United States,* 375 U.S. 233, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963).

The Trustee concedes that Reliant has satisfied these three elements. The FDIC had a lien on both the 145 Acres and the $90,000 in Rents, while Reliant was secured only by its junior lien on the 145 Acres. Nevertheless, the Trustee argues that the marshaling doctrine is equitable and should not be applied under the facts of this case. As discussed below, none of the Trustee's arguments justify denial of the Marshaling Motion.

■ First, the Trustee notes that Reliant did not acquire the judgment lien until March of 1995, after the 145 Acre sale was approved. He suggests that Reliant acquired the judgment lien at far less than the face amount of the judgment. As such, he argues that Reliant should not be granted equitable relief. The Court agrees with Reliant that its acquisition of the judgment lien and the price it paid are irrelevant. Reliant has rights in this case equivalent to those previously held by the RTC. Even if Reliant acquired this lien at a discount, it did not lose the right to enforce the lien against the assets of the estate and to seek the invocation of marshaling in order to protect its rights as a lienholder.

■ The Trustee next argues that the Marshaling Motion was untimely since it was filed after the Trustee presented the 145 Acre sale to the creditors and Court for approval and since the Trustee represented that the sale would satisfy the FDIC's claim and free up other assets for the benefit of unsecured creditors. The Court also rejects this argument. Even though the request for marshaling was not raised until after the sale was completed, the Court finds no basis in the record to conclude that the Trustee would have pursued the sale of the 145 Acres any differently had Reliant raised the marshaling issue prior to the closing.

■ Finally, the Trustee argues that marshaling cannot and should not be applied when third parties, in this case the unsecured creditors, will be adversely affected. This same argument was rejected in *In re West Coast Optical Instruments, Inc.,* 177 B.R. 720, 722–723 (M.D.Fla.1992). The court held that prejudice to unsecured creditors is not a relevant consideration in deciding whether marshaling should be ordered. 177 B.R. at 722. This Court agrees with that holding. In most instances in which marshaling is requested by a junior lienholder, the effect of marshaling will be to reduce the recovery to unsecured creditors. If preventing adverse impact on unsecured creditors was an element of the test, the marshaling doctrine could rarely be applied.

■ In sum, the Court finds that marshaling is appropriate here. Moreover, since the sale proceeds have already been distributed to the FDIC, it makes no sense to require the FDIC to disgorge that portion of the sale proceeds equal to the remaining Rents and to then receive the Rents in their place. Instead, the Court will allow the FDIC to retain the sale proceeds and direct the Trustee to pay the remaining Rents to Reliant. This relief is appropriate since the $40,879.75 in remaining Rents represents the same amount Reliant would have received from the sale proceeds, had marshaling been ordered prior to payment to the FDIC.

The Trustee should pay Reliant these monies now even though these proceeds are subject to surcharge. The Trustee's surcharge rights can be enforced against other collateral subject to Reliant's lien which is not at issue in this present dispute.

For the foregoing reasons, it is—

ORDERED as follows:

1. The Marshaling Motion is granted.

2. The Trustee is directed to immediately pay Reliant $40,879.75, the amount that remains from the Rents.

3. The Trustee's entitlement to surcharge the proceeds from the 145 Acre Sale will be enforced against the proceeds generated from the sale of additional real property of this estate which is subject to Reliant's judgment lien.

DONE and ORDERED.