Woodworth, J.
(after stating the facts.) I have stated so much of the pleadings, as I deem necessary to present the questions on which this cause' depends. The hearing in the court below, was on bill and answer; no testimony having been taken on either side. In such cases, the answer is to be taken as true.
From the statement made it will be perceived, that the material point is, whether the respondents are entitled to have the amount of 3,000 dollars advanced by the mortgagors in money and goods, applied as a set-off against the mortgage. It will be conceded, I apprehend, that if was not competent for the mortgagors or mortgagee, to impair the rights w^ich the respondents acquired by their judgment. For aught that appears, there was no previous lien on the lands, other than the mortgage. The respondents then took their judgment subject to that mortgage, and could not exonerate the land without paying what was due; that is to say, all payments that had been specifically made, they * were entitled to have credited. Such payments operated as an extinguishment of so much money secured by the mortgage. The parties to' the mortgage could not, by any arrangement or agreement between themselves, defeat this right of the subsequent judgment creditor. Thus far there is no ground for controversy. In this case, the mortgagors had made advances to the mortgagee genera]]y_ ]Sf0 particular application of these advances had J r 11 been made to the mortgage., But admitting that the mortgagors were not-otherwise indebted to the mortgagee, there is no proposition clearer than that the advances con , , x ... . stituting the sum of 3,000 dollars, were a valid set-on in *433 law and equity, which the mortgagee could got resist, if insisted on by the mortgagors. Had no claims arising or subsequent encumbrances existed, it would have remained in the power of the parties to have applied the advances as- a set-off, or not, at their election. But- the moment the judgment attached, the" ground was changed.- The respon dents then- succeeded to the rights of the mortgagors, so far forth as to claim the benefit-of the set-off on which the mortgagors- might have relied; or, in other words, whatever was available to the mortgagors, and operated either in whole or in part as an extinguishment of the morí gage, the same' defence enured to the respondents by rea son of their'judgment-, [1]
It is well settled that where a person pays money to a creditor, who has demands against .him on two accounts, the creditor may place it to which he pleases, unless the debtor directs its application. [2] (2 Cain. 99, 2 Str. 1180). If the mortgagee, at the time the' judgment was entered, had any existing debt against the mortgagors other than the mortgage, it would seem that he would hate been entitled to the benefit of this principle.
The question then arises, had Williams, the mortgagee, any other debt besides that secured by the mortgage, when the respondents obtained their judgment ? It does not appear that he had any. Nothing is said about a demand or even a contingent liability, until-the 5th of June, 1819", at which day, the answer states, the mortgage was assigned *to the bank, and that the sum of 3,000 dollars was credited as directed by the mortgagee; on á promissory note of 5,000 dollars drawn by the mortgagors and endorsed by the mortgagee.
*434 Now the first objection to this is, that it no where appears when the .note was drawn, nor when payable. ■ It may have been drawn and endorsed long after the judgment. Without proof we cannot say it was not. If subsequent to the judgment, then no legal ground existed for applying the doctrine that the creditor may make application of the payment. But suppose the note to have been endorsed before the judgment, and payable afterwards; the liability was only contingent, and constituted no debt within the meaning of that term. It is not competent for a . creditor who has one existing debt to apply money received generally, to extinguish his liability as endorser on a note which he may or may not be compelled to pay. If the maker takes up the note, there is an end. of the liability. Admitting, however, that the mortgagee in this' case had become chargeable as endorser, he did not thereby become a creditor. He stood as a-surety, and could maintain no action until he had paid the note. Then, and not till then, would his debt accrue against the makers of the note. I am not aware of any principle of law that will authorise the surety to exonerate himself by applying money which his principal, being a debtor on a different account, may have advanced without any particular direction. Such a doctrine would extend beyond the rule which has been sanctioned by the wisdom of the law. It does not seem to be required by the justice of the case. In the present case, however, we are relieved from doubt and uncertainty, in the absence of all evidence, that Williams, the mortgagee, at the time the judgment was entered, had any claim beside the mortgage. The consequence is, that the 3,000 dollars is a valid set-off, and must be allowed.
It is true that the respondents, after having paid, 3,333 dollars, tendered the further sum of 3,353 dollars, which they were willing then to pay; and demanded an assignment. The cashier received the money, and it has ever * since been held by the bank. As the assignment was refused, and the respondents were unwilling to have- satisfaction entered, the business has remained in statu quo ever since. The respondents were driven to their suit in *435 equity, and now put themselves on their rights. They are entitled to do so, the negotiation having failed. From this view it follows that the adjustment stated in the master’s report is correct. The respondents are properly credited with the 3,000 dollars towards the mortgage; and as to the 3,353 dollars tendered and remaining in the hands of the hank, the respondents áre entitled to have it refunded with interest.
The respondents coming in as judgment creditors to redeem the mortgage, are also entitled to an assignment of it, to enable them to reimburse themselves for the money advanced.
That the respondents have been benefitted by purchasing notes of the Niagara bank at a discount, canüot be urged as a ground for excluding the 3,000 dollars as a credit on the mortgage, because the stipulation to receive their bills was not accompanied by any agreement or understanding on the part of the respondents to waive that credit. Beside, the hank, without such stipulation, was bound by law to accept its own bills in payment, (a)
*436 •Neither does the erection of a grist mill by the mortga gors raise an equity in their favor. There was no request by the respondents to make this expenditure. If it enhanced the value of the premises, the appellants will reap *437 She advantage on a sale to satisfy the respondents’ judgment.
I am of opinion that the decree of his honor the chancellor be affirmed.
Savage, Ch. J. concurred.
Sutherland, J. not having heard the argument, gave no opinion.
Burrows, Crarv, Dayan, Ellsworth, Enos, Haight, Lake, M’Call, M’Martin, Nelson, Smith and Waterman, Senators, concurred.
Stebbins, Senator, (after stating the pleadings.) As all fraud on the part of the bank and its cashier is denied, and even all knowledge of the respondent's judgment at the time *438 of the assignment, the question is" one of strict right • whether a judgment creditor can enforce a set-oif, under these circumstances againsf an assignee for valuable consideration.
*The opinion of the court of chancery in favor of this right, seems to proceed upon the ground that the effect of the judgment against Storrs & Co. was to bind all their rights over the mortgaged premises as they existed at that time, and to substitute the judgment creditors in their place; and as Storrs & Co. then had a right to set off the $3000 on the mortgage, this right became vested in the judgment creditors of Storrs & Co. by virtue of the judgment.
What would have been the rights of a purchaser of the mortgaged premises in relation to this set-off, especially if he had given immediate notice to the mortgagee, we are not called upon to determine. He might with more propriety be said to take the place of the mortgagor. He takes the land, and the mortgage debt would be cast upon him. But it appears to me that a judgment creditor stands in quite a different situation.. He is in no wise the assignee of the debtor, before sale under his judgment. He has no interest in the land; but a naked lien upon it, in case no personal property can be found to satisfy his debt: He has his election to avail himself of that lien or not; and the effect of his lien upon the land depends not only upon his election, but upon other circumstances. He does not succeed to the rights of the judgment debtor even over the land. Its value may be essentially impaired by a wrong doer, and he has no remedy; his security may be lessened in many ways, and he is without redress, which belongs only to the judgment debtor. If the lien of a judgment entitles the creditor to avail himself of a demand in the hands of his debtor by way of set-off, to reduce the amount of a prior encumbrace, I perceive no reason why, upon the same principle, he might not claim the benefit of a right of action possessed by the debtor for an injury to the estate, by means of which the judgment security was diminished.
Such a principle, I believe, has never been extended beyond the case of a collusion and fraudulent deterioration of *439 the property subject to a lien, with intent to predjudice the encumbrancer. This rests upon the familiar principle that . t r • i fraud and damage constitute grounds of an action on the case. (11 John. 136.)
*1 cannot agree, therefore, that the respondents, by obtaining a judgment against Storrs & Co., succeeded to the rights of set-off which Storrs & Co. might have had as against the mortgage of Williams. But what were those a ° ° ... . rights ? They held a demand against Williams, and Williams held the mortgage against them. The right of set-off, (if such it may be called,) was certainly a very imperfect . . . , J rrri one, and liable to be defeated without the assent of Storrs & Co. Suppose Williams had omitted to enforce his mortgage until he had been made liable as indorser, and paid the note of Storrs & Co. in the bank, or until he had in any other way acquired a demand against Storrs & Co. to the amount of $3,000, surely he might have met this claim of set-off by a counter claim to balance it. The right, therefore, depends upon other circumstances than the existence of the demand and the volition of Storrs & Co. Again suppose Williams had tendered the $3,000 to Storrs & Co. I apprehend they would not have been at liberty to reject the money, and insist upon the set-off; for Williams was not bound to receive part of his mortgage debt in that way. So, too, if Williams had actually paid the $3,000 to Storrs & Co. after the respondents’ judgment, and without notice, I am at a loss to conceive why the respondents should avoid that payment; and yet it must be avoided, or the respondents’ right of set-off could not be enforced. If Storrs & Co. hid a perfect right to set-off this demand, and the respondents in virtue of their judgment, succeeded to that right, it certainly would not answer to suffer payment to be made to Storrs & Co.; for in this way the respondents’ rights would be sacrificed; and it appears to me to be no answer to say that such payment would have enabled Storrs & Co. to re-pay the same sum to reduce the encumbrance; for however enabled they might have been to do so, there possibly might have been *440 an unwillingness. If the rights of the respondents, as judg ment creditors, as such.as are contended for, I perceive no other mode of enforcing them but by giving the judgment the same effect as an assignment of the demand by Storrs & Co, and notice to Williams, and holding all subsequent payments fraudulent,
This doctrine appears to me to be fraught with extensive mischief. It makes the docketing of a judgment notice to all *prior encumbrances to close their dealings with the judgment debtor; and as the balances may then happen to be, so they must remain until the winding up of the whole concern. If a prior mortgage or judgment creditor happens to have monies of the judgment debtor in his hands for a temporary purpose; for instance, a loan for a single day, he is not at liberty to repay it, but it must be .considered a payment in reduction of the amount of his lien, It is placing the docketing of a junior judgment pn the footing of the bid filed to reduce prior encumbrances ; and restraining the ordinary course of dealing between debtor and creditor.
Justice requires that the rights of a junior encumbrancer should not be prejudiced by any arrangement between the debtor and a prior encumbrancer, to change the application of payments actually made in reduction of the prior encumbrance : but whether sound policy requires that a judgment creditor should, by obtaining his judgment, acquire a lien, upon the demands existing in favor of his debtor, in no wise connected with the liens upon the estate, and so inconvenient and dangerous to other creditors, is in my judgment, extremely questionable.
The right of Storrs & Co. to make this set-off, was not, therefore, an absolute right in them; but rather a privilege of which they might avail themselves, if they should after wards happen to be placed in a proper situation to do so ’ a privilege depending upon circumstances beyond their control; and one to which the respondents, as judgment creditors, did not, and could not succeed.
The mortgage was assigned by Williams to the bank of Niagara for a valuable consideration, to the amount then *441 due upon it, in the fair course of business; and the question then arises, what are the rights of the bank as such assignees ?
. They took it undoubtedly subject to all the equity existing between the original parties; and with this qualification our courts are in the daily habit of protecting an assignee of paper not negotiable.
At the time of the assignment, the accounts between Storrs & Co. and Williams were adjusted, and Williams paid the $3,000 on the note of Storrs & Co. in the bank, so that beyond *all doubt, Storrs & Co. would have no claim to set-off against the mortgage in the hands of the bank-
The transaction being a fair one, and the purchase having been made by the bank, not with any intent to prejudice the lien of the respondents, but to secure their own demands against the parties to the mortgage, and the amount due upon the mortgage being ascertained and assented to by both the parties to it, ought not the equity of the bank to be considered as strong as that of the respondents ?
It was held, in the case of Henry v. Brown, (19 John. 49,) that a debtor, who, on being notified of the assignment of his security, neglected to assert his set-off, and promised to pay the assignee, was not at liberty afterwards to avail himself of his set-off, though a fair one, existing in his favor at the time of the assignment. In this case, the respondents did not attempt to assert the claim of set-off, until long after they had actual notice of the assignment; nor until after they had made part payment, and deposited funds sufficient for payment of the whole amount claimed by the bank.
There is much public convenience in the facilities which are afforded to the transfer of securities not negotiable by law ; and much good sense in the protection which the law proffers to the assignee of such securities. But the protection must be very insufficient, if the purchaser is bound, at his peril, to search out such complicated equities as may have existed between the parties to the instrument, at the respective periods when judgments may have been docketed *442 against the obligor. (Vid. 2 John. Ch. Rep. 443, 449.) The rule, as I understand it, is a simple one, easily understood, and, under it, the purchaser always has it in his power to ascertain the true state of his security. He takes it subject to the balance of accounts between the'parties to the instrument, if any balance exists in favor of the obligor at the time of the transfer. I think he is not bound to inquire into the state of accounts at any prior period,
Without further adverting, therefore, to the evidence of acquiescence in this assignment by the respondents, or to any advantage which they may have derived from the stipulation entered into by the bank as to the payment of the *morfgage money, in my opinion they are not entitled, as judgment creditors of Storrs & Co., to have the demand of $3,000, which Storrs & Co. held against the mortgagee at the time of their judgment, applied upon the mortgage in the hands of the bank of Niagara.
Gardner, Hart, and Oliver, Senators, concurred.
Decree affirmed.

 Per Chancellor in Chapman v. Robertson, 6 Page, 629. In general, the assignee of a demand takes subject to every equitable defence existing against it in the hands of the assignor. Miner v. Hoyt, 4 Hill N. Y. Rep. 193. Gay v. Gay, 10 Page, 369.

 See Post, 747. Seymour v. Van Slyck, 19 Wen. 91. Alien v. Culver, 3 Denio, 284. U. S. v. Kirkpatrick, 9 Wheat. 720; 5 Cond. 733. Stone v. Seymour, 15 Wen. 23. See further, Dig. N. Y. Rep. by Hogan, tit payment.

{a) Such is the general rule. How far it is qualified in case the bank becomes insolvent, and is proceeded against under the act, sess. 48, Ch. 325, $16, April 21, 1825, will appear by the following decision of Walworth, Chancellor, August, 1829, The first case denies the right of a depositor and cashier to a preference for the deposit of the former, or salary of the latter-The second decision is the one concerning set-off.
IN CHANCERY.
Bruyn against The Receiver of the Middle District Bank.
Severyn Bruyn was the cashier of the Kingston Branch of the Middle District Bank, and at the time the bank stopped payment he was a depositor to the amount of $105 12. He was allowed an annual salary, out of which he was to pay his own clerk, and was also to furnish a banking room for the accommodation of the branch. He claimed to retain out of the monies in the bank, at the time it stopped payment, the amount of his deposit, and an allowance for his salary up to that time pro rata. The receiver contended he was to be considered a mere creditor of the bank, and to receive his dividend with the other creditors. The question was by consent of the parties, submitted to the court.
The Chancellor. The money in the hank did not belong to the cashier, but the institution. Neither the cashier nor clerk had a right to exercise *436 any control over it, except so far as they were authorised by the directors. The cashier had no lien upon it for the payment of his salary or deposit; and the directors could not give him such a lien under the provision of the act of 1825, in contemplation of the insolvency of the institution. It is evidence of the fairness of the officers of the branch that they were not informed of the situation of the mother bank in time to withdraw their deposits; but it is their misfortune to be left in the same situation as other depositors and creditors of the institution.
The receiver is authorised to allow such sum for the use of the banking room, and to the clerk for attending to demand payment, and protest notes which fall due, as he may deem reasonable.
IN CHANCERY.
Is THE MATTER OF THE RECEIVER OF THE MlDHLE DISTRICT BaHK.
The receiver of the Middle District Bank submitted a variety of questions to the court, for instructions thereon, relative to the discharge of his duties on which the following directions were given.
The Chahcellor. In the case of Millery, the receiver of the -Franklin Bank, on the 3d of March last, this court decided that any equitable offset which the debtor had at the time the bank stopped payment was not altered by the appointment of a receiver. It makes no difference whether the debt of the bank was then payable or has become due since. If a debtor claims to offset bills which were then in the hands of any other person for his Use, the receiver should be satisfied he was the real owner of the hills at that time: and if the amount due thereon is lost, that the loss will legally and equitably fall on such debtor and not upon the person who had them for his use. If the real debtor is unable to pay, and the receiver is compelled to resort to the endorser, who is eventually to be the loser, he has the same equitable claim to offset bill's which he had at the time the bank stopped payment. But no such offset should be allowed to an endorser where he is indemnified by the real debtor, or where the latter can be compelled to pay.
An overdrawing is a debt due to the bank; and if the person who has overdrawn his account was at the time the bank stopped payment a Iona fide holder of the hills in his own right, the same rule of set-off must be applied. The evidence on which the receiver should act in allowing offsets, should be such as to satisfy him that the debtor could sustain such offset in a court of justice, if a suit was brought against him. If the receiver thinks proper to rely upon the affidavit of the party, he should at least require him to state when, where, and from whom1 he received the bills, and under what circum stances.
*437 Where the debtors and their sureties are insolvent, and only able to pay a part of their debts, it will be no injury to the creditors of the institution, if the receiver takes Middle District bills in payment; but in all such oases the receiver should estimate such bills at the probable amount of dividend which would he obtained thereon; that is, if the debtor is able to pay 75 per cent. of his debt, he should not be permitted to pay in bills at par, when they are in fact worth less than 75 per cent, in good money. In one of the suits brought by the receiver of the Greene County Bank, the supreme court decided, after full argument, that under the provisions of the act of 1825, bills which had been obtained by the debtors of the bank after it stopped payment, but before the appointment of a receiver, could not be offset; that the equitable right of the debtors to a set-off was not altered by the neglect of the attorney-general to apply and obtain the appointment of a receiver immediately. This must be considered the legal rule by which the receiver is to be governed. It having been decided there was no offset at law in such cases, there can he no pretence for claiming it in equity, as it is wholly opposed to every principle of equity and justice. If bills of the bank were taken to exchange, and remain on hand at the time the bank stopped payment, they should be returned; but if the agent had parted with the bills, it would be manifestly unjust to allow him to receive Middle District bills afterwards to offset.
below their par value as the debt due is probably below its par value.
Bills obtained by the debtors of a bank, after it has stopped payment, though before a receiver is appointed, are not admissible as a set-off.