EDWARD F. KING, Plaintiff, *v.* THE MILFORD NATIONAL BANK OF MILFORD, Defendant.

Supreme Court, Trial Term, Otsego County, July 27, 1938.

*Orange L. Van Horne* [*Theodore P. Feury* of counsel], for the plaintiff.

*Charles H. Merriam* [*Donald H. Grant* of counsel], for the defendant.

PERSONIUS, J.   On November 6, 1936, and prior thereto, one I. Reid Davidson was the owner of a farm subject to a mortgage of about $2,500 held by the defendant to secure the payment of two notes.   Davidson was also indebted to the plaintiff in the sum of $715.60, secured by lien on personal property.   On November 6, 1936, the barn on the farm and the personal property were destroyed by fire.   The barn was insured for $2,000, payable to the defendant as mortgagee.   The personal property was not insured.   On November 12, 1936, Mr. Davidson gave the plaintiff a second mortgage on the farm.   Through a misunderstanding the mortgage was not recorded until March 3, 1937.   *However, the defendant knew in November, 1936, that the plaintiff had the second mortgage.*

The insurance money was paid January 25, 1937; $828.63 thereof was ultimately applied by the defendant to the first mortgage debt; $649.60 was applied by defendant to an *unsecured* note. The remainder was paid out for the benefit of said Davidson to

various parties. The plaintiff asks that the entire $2,000 be applied to the defendant's first mortgage.

To summarize, the defendant held as security for its debt: (1) a first mortgage on Davidson's farm, and (2) the right to receive the insurance money and apply it to the first mortgage; the plaintiff held a second mortgage on the farm subject to the defendant's first mortgage. He had no claim on the insurance money. *The defendant had actual notice of plaintiff's second mortgage.* The defendant was, therefore, required to apply the insurance money on its mortgage regardless of any agreement between it and the plaintiff. " A mortgagee having other security for the payment of a debt secured by the mortgage, and having notice of a subsequent incumbrance upon the same premises, is bound in equity to apply in the first instance to the payment of the debt the security in which the subsequent mortgagee does not share; and if the prior mortgagee under such circumstances releases the other security, his mortgage is, to the extent of the value of that security, satisfied so far as such subsequent mortgagee is concerned." (2 Jones on Mortgages [8th ed.], § 900, p. 239; § 897, p. 235.) " To give a junior mortgage precedence over a senior one, there must be * * * a superior equity in the junior mortgagee. Such an equity, however, arises from anything done by the first mortgagee to the prejudice of the second, or to the impairment of his security, with actual knowledge of the existence of the second mortgage." (41 C. J. § 539, p. 579; *Miles* v. *National Bank of Ky.*, 140 Ky. 376; 131 S. W. 26; *Turner* v. *Ridge Heights Land Co.*, 92 N. J. Eq. 64; 111 A. 675; *Hitchcock* v. *Fortier*, 65 Ill. 239, 244.) This rule was recognized in *Sherman* v. *Foster* (158 N. Y. 587, 595, 596) but not applied for the *sole* reason that the court found that the prior mortgagee had no notice or knowledge of the junior lien. (See, also, *First National Bank of Southampton* v. *Ryder*, 233 App. Div. 461, 463; *Niagara Bank* v. *Rosevelt*, 9 Cow. 408, 410, 411; *Prouty* v. *Price*, 50 Barb. 344, 345; *Carlin* v. *Frey*, 157 App. Div. 84.)

It follows that the defendant, knowing of the plaintiff's second mortgage, could not divert the insurance money to any purpose other than the partial satisfaction of the defendant's first mortgage. Equity required that it be so applied.

The plaintiff argues that he is entitled to recover on contract. Intermediate the fire and the giving of the second mortgage, the plaintiff advised Davidson that he would bring suit on his claim unless it was secured. Davidson agreed to give a second mortgage. Plaintiff testifies that he then saw the defendant's cashier and advised him that he would take the second mortgage if the defendant would assure the plaintiff that the insurance money would be applied to the first mortgage, and that the defendant's

cashier stated that " when the insurance money was paid, it would be applied on the first mortgage." Thereupon plaintiff took the second mortgage, refrained from suing and extended Davidson's time. Plaintiff also tentatively agreed to finance Davidson in rebuilding the barn. However, he was never called upon to do this. Mr. Platt, defendant's cashier, denied having any conversation with plaintiff at that time. Plaintiff's recollection of this conversation was corroborated by the testimony of Davidson, who says Mr. Platt told him that he had talked with King. It is also corroborated by a memorandum of the dates and amounts of the notes secured by the defendant's mortgage. It was admittedly in Platt's handwriting. This memorandum was brought by plaintiff to his attorney prior to the execution of the plaintiff's second mortgage. We feel compelled to accept Mr. King's recollection and hold that on or about November 9, 1936, Mr. Platt did agree with the plaintiff that the insurance money would be applied to the first mortgage. There is no claim that the plaintiff at any time consented to the diversion thereof to any other purpose. It was Davidson's understanding with the plaintiff that the insurance moneys would be applied to the first mortgage. The plaintiff refrained from suing Davidson and substantially extended the time of payment of the latter's debt. This was sufficient consideration. (*Traders Nat. Bank* v. *Parker*, 130 N. Y. 415, 420; *Hamer* v. *Sidway*, 124 id. 538, 545; *Scherer* v. *East Side Nat. Bank*, 263 id. 190, 196.)

The defendant argues that Mr. Platt was without authority to bind it by such agreement. He was the defendant's cashier and for aught that appears its active manager; he seems to have been its sole representative in this matter. He it was who applied the insurance moneys in part to the first mortgage, in part upon the bank's unsecured note, and authorized the application of a part to creditors of Davidson. His notation or countersignature appears upon the checks. In *Taylor* v. *Commercial Bank* (174 N. Y. 181), cited by the plaintiff, it was held that the cashier had no authority to make representations on behalf of the bank as to the solvency of a customer. The court said (p. 185): " Obviously, when the representations were made, the cashier was not engaged in the transaction of the business of the bank." We hold that Mr. Platt was here so engaged, and that he was held out as having authority to represent the bank in this transaction.

We award and direct judgment in favor of the plaintiff requiring the defendant to apply upon its mortgage the balance of the proceeds of the insurance money not previously so applied, said application to be made as of the date of the receipt of the insurance money by the defendant, namely, February 2, 1937.