**In re ELMWOOD FARMS, INC., Debtor.**

**Bankruptcy No. 80 B 20346.**
**83 Adv. No. 6039.**

United States Bankruptcy Court,
S.D. New York.

May 23, 1983.

Sidney Turner, P.C., White Plains, N.Y., for trustee.

Reich & Reich, White Plains, N.Y., for Rings End, Lawton Adams Const. Corp.

James A. Crawford, Tenafly, N.J., for J & J Mechanical Contractors, Inc.

Covey, Roberts & Buchanan, Katonah, N.Y., for Kat Excavators Corp.

## DECISION ON APPLICATION SEEKING DETERMINATION REGARDING PRIORITY OF THREE MECHANIC'S LIENS, A JUDGMENT AND FIFTH MORTGAGE.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in this converted Chapter 7 case seeks a determination regarding the priority of three mechanic's liens, a judgment and a fifth mortgage that have attached to the proceeds realized from a sale of the debtor's property. Kat Excavators Corp., a mechanic's lienor that holds the latest filed lien of all the defendants, claims it has a right to share available proceeds on a parity with two earlier mechanic's lienors, even if in doing so it must "jump over" the prior recorded fifth mortgage and judgment. The mortgagee, J & J Mechanical Contractors, in turn asserts priority over Kat Excavators' lien, on the ground that its mortgage was recorded before the mechanic's lien was filed. The mortgagee alterna-

tively contends that its mortgage should be treated as though it were a mechanic's lien, enabling it to share available proceeds on a parity with the other three mechanic's lienors. Additionally, two of the mechanic's lienors, Rings End of Lewisboro and Lawton Adams Construction Corp., have charged the trustee with failing to marshal assets before satisfying three senior mortgagees from proceeds derived from the sale of the debtor's property. These two defendants contend that the trustee's actions in disbursing the sale proceeds prejudiced the junior lienholders by depleting the available proceeds to which their liens attached.

## FINDINGS OF FACT

1. The debtor, Elmwood Farms, Inc. filed a petition for reorganization under Chapter 11 of the Bankruptcy Code on August 8, 1980.

2. The debtor's Chapter 11 case was converted for liquidation under Chapter 7 of the Code by an order entered on March 18, 1981.

3. Sidney Turner, P.C. was appointed trustee pursuant to 11 U.S.C. § 15701.

4. The debtor owned a horse farm and stables in Lewisboro, New York, situated in Westchester County. In December 1978, work was commenced on the construction of an indoor equestrian ring, pursuant to an agreement with the owner, Elmwood Farms.

5. When J & J Mechanical Contractors, Inc. (hereinafter "J & J Mechanical") had completed its work, on or about June 1, 1979, the debtor owed it a balance of $160,000 for work and materials provided in the construction of the equestrian ring. An agreement was reached whereby on June 11, 1979, Elmwood Farms executed a promissory note in the amount of $160,000 in favor of J & J Mechanical. As security for the payment of the note, Elmwood Farms also executed a mortgage on June 26, 1979 in favor of J & J Mechanical. The mortgage was recorded on November 1, 1979 as a fifth mortgage on the debtor's Westchester property.

6. The claim filed by defendant Lawton Adams Construction Corp. (hereinafter "Lawton Adams") indicates that it commenced work on the debtor's property on January 23, 1979 and completed its last work on March 23, 1979. Lawton Adams subsequently filed a mechanic's lien against the debtor's property on June 5, 1979, in the amount of $12,597.64.

7. The defendant Rings End of Lewisboro, Inc. (hereinafter "Rings End") filed a mechanic's lien against the debtor's property on July 24, 1979, in the amount of $22,553.06. The papers submitted in this proceeding on behalf of this defendant do not indicate the dates upon which its work commenced or terminated in connection with the debtor's property, nor does its proof of claim form reflect this information.

8. On August 29, 1979, defendant Cody Lumber Co., Inc. caused a judgment to be docketed against the debtor's property in the amount of $13,372.68.

9. The claim form filed by defendant Kat Excavators Corp. indicates that it commenced work on the debtor's property on January 29, 1979 and completed its construction work on October 12, 1979. On November 15, 1979, Kat Excavators filed a mechanic's lien against the debtor's property in the amount of $15,100.00.

10. On June 17, 1981, the trustee sold the debtor's property in Lewisboro, together with another parcel in Westchester County and five acres of unimproved Connecticut property, for a total of $611,000. The fifth mortgage, the judgment, and the three mechanic's liens in question all had encumbered the Westchester property. The conditions of sale provided that the property was to be sold free and clear of liens, with any existing liens and encumbrances to attach to the proceeds of the sale. These proceeds are the focus of the instant priority dispute.

11. Prior to the sale of the property, a barn which housed several horses was destroyed in a fire that caused the death of some of the animals. The insurance proceeds relating to this incident, amounting to

approximately $50,000, were paid to the trustee.

12. The second, third and fourth mortgages, held by Peoples National Bank of Rockland County, Samuel and Emma Kripke, and Northeast Small Business Investment Corporation, (hereinafter "the senior mortgagees"), had been recorded against two separate properties; the debtor's Westchester County property, and property situated in Rockland County, owned by Lloyd W.R. Ballantyne and Doris R. Ballantyne, his wife. The Ballantynes had mortgaged their property in conjunction with the mortgage of the debtor's property, as part of the security for two separate promissory notes totalling $320,000, executed solely by the debtor. The Ballantynes were merely accommodation mortgagors of their Rockland County property, and were not liable on the notes for any sums that the debtor had borrowed from the senior mortgagees.

13. The trustee has already satisfied the liens of the senior mortgagees from the proceeds of the sale of the debtor's property. However, two of the mechanic's lienors involved in the priority dispute herein, namely Rings End and Lawton Adams, argue that the trustee should have required the senior mortgagees to resort first to assets unencumbered by the junior mechanic's liens. The senior mortgagees' liens covered two properties, the debtor's Westchester property as well as the Ballantynes' Rockland property, whereas the two mechanic's liens attached solely to the debtor's Westchester property. Therefore, Rings End and Lawton Adams assert that the senior mortgagees should have protected the junior lienholders by first availing themselves of the Ballantynes' Rockland County property as well as the insurance proceeds from the barn fire, before looking to the debtor's sale proceeds for satisfaction of their liens. The two mechanic's lienors contend that application of the equitable doctrine of marshaling assets would have made available more surplus proceeds from the sale of the debtor's property with which to satisfy their liens.

## DISCUSSION

### PRIORITY OF THE LIENS

Pursuant to New York Lien Law § 3 (McKinney 1966), contractors, laborers, materialmen and others who perform labor or furnish materials for the improvement of real property at the owner's request or consent, can establish a lien on the real property and improvement for the value of, or agreed price for, such labor and materials provided. The lien arises from the time at which the notice of lien is filed.[1] *Beacon Construction Co., Inc. v. Matco Electric Co., Inc.,* 521 F.2d 392, (2d Cir.1975). Section 10 of the N.Y. Lien Law presently prescribes that a notice of lien may be filed at any time during the progress of the work or within eight months after the final performance of work or furnishing of materials, with certain exceptions not pertinent to this case.[2] However, the present eight

---

1. Section 3 states in pertinent part:
   "§ 3. Mechanic's Lien on real property.
   A contractor, subcontractor, laborer, materialman, landscape gardener, nurseryman or person or corporation selling fruit or ornamental trees, roses, shrubbery, vines and small fruits, who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or subcontractor, shall have a lien for the principal and interest, of the value, or the agreed price, of such labor or materials upon the real property improved or to be improved and upon such improvement from the time of filing a notice of such lien as prescribed in this chapter." ...

2. Section 10 states in pertinent part:
   "§ 10. Filing of notice of lien.
   Notice of lien may be filed at any time during the progress of the work and the furnishing of the materials, or, within eight months after the completion of the contract, or the final performance of the work, or the final furnishing of the materials, dating from the last item of work performed or materials furnished; provided, however, that where the improvement is related to real property improved or to be improved with a single family dwelling, the notice of lien may be filed at any time during the progress of the work and the furnishing of the materials, or, within four months after the completion of the contract, or the final performance of the work,

month rule became effective on September 1, 1982, and is applicable to work performed or materials furnished on an improvement under a contract entered into after that date. Thus, the text of the law as it existed prior to the September 1, 1982 amendment date will govern this case as all work was performed and all liens were filed in 1979. Under former § 10, the prospective mechanic's lienor had four months from the completion of work or final furnishing of materials within which to file a notice of lien:

"§ 10. Filing of notice of lien

Notice of lien may be filed at any time during the progress of the work and the furnishing of the materials, or, within four months after the completion of the contract, or the final performance of the work, or the final furnishing of the materials, dating from the last item of work performed or materials furnished...."

The three mechanic's lienors involved in this case appear to have filed timely mechanic's liens. Although no information was furnished to the court concerning the dates on which the defendant Rings End commenced and completed its work, which would be necessary to a determination that

its notice of lien was filed within the statutory four month period, it will be assumed that the notice of lien was timely filed as there has been no objection raised as to this point.

When several mechanic's liens are filed against a particular property, § 13(1)[3] of the Lien Law provides that they are not ranked in priority according to the date each notice of lien was filed. Rather, the statute indicates that all mechanic's lienors share available assets on a parity, with certain exceptions not relevant here:

"Persons shall have no priority on account of the time of filing of their respective notices of liens, but all liens shall be on a parity ... "

In this case, the two earliest mechanic's liens, namely those held by Lawton Adams and Rings End, were filed earlier than the judgment, the fifth mortgage and the third mechanic's lien. Therefore, these two mechanic's liens will have an equal priority, *Drachman Structurals, Inc. v. Anthony Rivara Contracting Co.*, 78 Misc.2d 486, 356 N.Y.S.2d 974 (Supt.Ct.1974), and are entitled to satisfaction before any of the other liens. However, the parties have experienced some confusion regarding a perceived

or the final furnishing of the materials, dating from the last item of work performed or materials furnished." ...

**3.** Section 13 states in pertinent part:
"13. Priority of liens.
(1) A lien for materials furnished or labor performed in the improvement of real property shall have priority over a conveyance, mortgage, judgment or other claim against such property not recorded, docketed or filed at the time of the filing of the notice of such lien, except as hereinafter in this chapter provided; over advances made upon any mortgage or other encumbrance thereon after such filing, except as hereinafter in this article provided; and over the claim of a creditor who has not furnished materials or performed labor upon such property, if such property has been assigned by the owner by a general assignment for the benefit of creditors, within thirty days before the filing of either of such notices; and also over an attachment hereafter issued or a money judgment hereafter recovered upon a claim, which, in whole or in part, was not for materials furnished, labor performed or moneys advanced for the improvement of such real

property; and over any claim or lien acquired in any proceedings upon such judgment. Such liens shall also have priority over advances made upon a contract by an owner for an improvement of real property which contains an option to the contractor, his successor or assigns to purchase the property, if such advances were made after the time when the labor began or the first item of material was furnished, as stated in the notice of lien. If several buildings are demolished, erected, altered or repaired, or several pieces or parcels of real property are improved, under one contract, and there are conflicting liens thereon, each lienor shall have priority upon the particular part of the real property or upon the particular building or premises where his labor is performed or his materials are used. Persons shall have no priority on account of the time of filing their respective notices of liens, but all liens shall be on a parity except as hereinafter in section fifty-six of this chapter provided; and except that in all cases laborers for daily or weekly wages shall have preference over all other claimants under this article."

inconsistency in the manner in which the provisions of the Lien Law apply to the specific facts in this case. The purported inconsistency in the statute relates to the third mechanic's lienor, Kat Excavators, whose lien was the last filed of these five defendants. On its face, Lien Law § 13(1) indicates that all mechanic's lienors enjoy an equal priority status, which in this case would mean that Kat Excavator's lien would "jump over" the earlier recorded judgment and fifth mortgage to share equal priority with the two earlier mechanic's liens. However, the first clause of the same statute, § 13(1), also states the following:

"(1) A lien for materials furnished or labor performed in the improvement of real property *shall have priority over a* conveyance, *mortgage, judgment* or other claim against such property *not recorded, docketed or filed at the time of the filing of the notice of such lien,* except as hereinafter in this chapter provided;" [Emphasis added].

This language is supportive of the fifth mortgagee's contention that Kat Excavator's mechanic's lien should *not* be accorded priority over the mortgage, because the mortgage *was already recorded* at the time the mechanic's lien was filed. Presumably, the judgment lienor, Cody Lumber, which did not file an answer in this proceeding, would make a similar argument in an attempt to deny Kat Excavators an equivalent status with the other two earlier mechanic's lienors. Thus, the same statutory section is the source of two conflicting statements regarding the priority to be accorded to a mechanic's lienor. Therefore, the concept of parity among mechanic's lienors must be reconciled with that of "first in time, first in right" as it applies to the judgment and mortgage.

THE JUDGMENT

█ Pursuant to the last quoted clause of New York Lien Law § 13(1), the November 15, 1979 mechanic's lien filed by Kat Exca-

vators would *not* appear to have priority over the August 29, 1979 judgment since the judgment was already docketed at the time that Kat Excavators filed its mechanic's lien. However, a judgment must pass a second test. Section 13(1) further recites that a mechanic's lien has priority "over . . . a money judgment hereafter recovered upon a claim, which, in whole or in part, was *not for materials furnished, labor performed or moneys advanced for the improvement of such real property;* and over any claim or lien acquired in any proceedings upon such judgment." [Emphasis added]. Thus, only a docketed judgment founded on a claim based solely on materials furnished, labor performed, or moneys advanced for the improvement of real property, could have priority over a mechanic's lien. *Corbin-Kellogg Agency, Inc. v. Tasker,* 248 A.D. 58, 289 N.Y.S. 156 (3d Dept. 1916); *Sutton Place Apartments v. U.S.,* 407 F.Supp. 1213 (W.D.N.Y.1976). In the instant case, the Cody Lumber judgment was based on labor performed and materials furnished [4] and *was* docketed prior to Kat Excavator's mechanic's lien. Notwithstanding these facts, the statutory language does not expressly warrant the conclusion that the judgment is entitled to priority; it merely states that under these conditions *the mechanic's lien is not superior.* The possibility remains that the judgment and mechanic's lien should be treated equally. In other words, the situation presented is as follows:

A has priority if B is not docketed;

B is docketed;

Therefore, B has priority over A?

The last phrase is *not* a logical conclusion; B might be equal in priority to A. This dilemma was addressed in the case *City and County Savings Bank v. Oakwood Holding Corp.,* 88 Misc.2d 198, 199–200, 387 N.Y.S.2d 512 (Sup.Ct.1976):

"[L]ien priorities are not strictly matters of statutory creation and concern, but instead are governed in the first instance

---

**4.** Although no papers have been submitted in this proceeding on behalf of this defendant, it is presumed that its judgment related to labor and materials provided during the construction of the equestrian ring.

by the common law .... The common-law rule of first in time, first in right may of course be altered by statute, but in the absence of any legislative changes it is well established that the common-law rule still controls. (See *Booth v. Bunce*, 33 N.Y. 139).

Accordingly, where a statute expressly decrees that one lien shall have a preference over another, regardless of the order in which they are filed, the common law is to that extent displaced. However, where the statute in question fails to speak, the priority of the lien is determined not by the legislative intent of the statute but rather by the common-law rule which establishes lien priorities in the order of acquisition, first in time standing first in the order of rank.

. . . . .

Subdivision (1) of section 13 provides that a mechanic's lien shall have priority over a later docketed judgment. The statute also accords a mechanic's lien preference over any judgment which, in whole or in part, is not based upon a claim for materials furnished, labor performed or moneys advanced for the improvement of the real property to which the lien has attached. *But as to a judgment lien arising out of a claim for money, labor or materials used in the improvement of real property, which was docketed prior to a mechanic's lien, the statute is silent. Under such circumstances, common-law rule must prevail.* Therefore, since Skil-Bilt's judgment was docketed prior to the date upon which Kenneth E. Hill filed his notice of mechanic's lien, Skil-Bilt must be accorded priority to the surplus moneys." [Emphasis added].

Therefore, it is clear that Cody Lumber's judgment will have priority over the Kat Excavators subsequently filed mechanic's lien.

■ With the foregoing discussion in mind, it would be illogical to allow Kat Excavators to stand in parity with the earlier mechanic's lienors, notwithstanding the language of the clause in § 13(1) declaring all mechanic's liens to be on a parity. If the parity concept were automatically applied, it would render meaningless the statutory language pertaining to prior docketed judgments and mortgages, and case law supporting that language, i.e., *City and County Savings Bank v. Oakwood Holding Corp.*, quoted supra, and *W.L. Development Corp. v. Trifort Realty*, 44 N.Y.2d 489, 406, N.Y.S.2d 437, 377 N.E.2d 969 (1978). Instead of the earlier docketed judgment obtaining priority over the subsequently filed mechanic's lien, blind application of the parity concept would permit a mechanic's lien ipso facto to share equal priority with any mechanic's lienors who had filed notices of liens even earlier than the judgment. Clearly this would be an absurd result. However, the apparent inconsistency in the two portions of § 13(1) can be harmonized if all mechanic's lienors in the same "class" are treated alike. Whenever non-mechanic's liens (such as judgments) intervene chronologically, separating earlier mechanic's lienors from those filing later, the concept of parity may not be used to enable a mechanic's lienor in a later "class" to jump backwards in time over an intervening judgment to join the earlier mechanic's liens and enjoy their higher priority status. Interpreting the statute in this fashion avoids conflict between the two clauses of the statute and allows a more logical result.

## THE MORTGAGE

■ The foregoing discussion would support the conclusion that valid prior recorded mortgages as well as prior docketed judgments enjoy priority over subsequently filed mechanic's liens. Indeed, the N.Y. Court of Appeals has so held. *W.L. Development Corp. v. Trifort Realty*, 44 N.Y.2d 489, 406 N.Y.S.2d 437, 377 N.E.2d 969 (1978). Accord, *Ausable Chasm Co. v. Hotel Ausable Chasm & Country Club, Inc.*, 263 A.D. 486, 33 N.Y.S.2d 427 (3d Dept.1942). Thus, in the instant case, J & J Mechanical argues that its mortgage, recorded November 1, 1979, would be entitled to a higher priority status than Kat Excavator's mechanic's lien, filed November 15, 1979. However, notwithstanding outward appearances, a

further exploration of what constitutes a "valid" prior recorded mortgage is warranted.

■ Section § 7 of New York's Lien Law recites in pertinent part:

"A conveyance, mortgage, lien or incumbrance made by an owner of real property, for the purpose of avoiding the provisions of this article, with the knowledge or privity of the person to whom the conveyance is made or in whose favor the mortgage, lien or incumbrance is created, shall be void and of no effect as against a claim on account of the improvement of such real property, existing at the time of the making of the conveyance or the creation of such mortgage, lien or incumbrance."

There have been two New York Court of Appeals cases construing this section of the Lien Law. The earlier case, *Foxson v. Elmus Building Corp.*, 276 N.Y. 30, 11 N.E.2d 339 (1937) concerned several mechanic's lienors who had performed labor or furnished materials on the subject premises, *prior* to the time when another potential mechanic's lienor obtained a mortgage from the owner of the premises, to secure the value of labor and materials provided for the installation of plumbing and heating. None of the other lienors filed a notice of lien for their work until *after* the mortgage was recorded. The court found that the statute "is not directed exclusively against transactions in which may be involved evil, sinister, fraudulent intent." 276 N.Y. at 32, 11 N.E.2d 339. In fact, the court observed that the lower courts specifically found that the mortgagee had not been guilty of any moral turpitude. However, the court held that the mortgage would be subordinated to the mechanic's liens because these lienors had already possessed claims for labor and materials at the time the mortgage was created. The court explained:

"If appellant had conformed with the Lien Law and filed a notice of lien for material and labor he would have been on a parity with those lienors who furnished material and performed labor prior to the time of the rendition of his services. . . .

[T]he only reasonable inference of fact to be drawn from his act in taking the mortgage of August 19th is that his purpose was to attempt to take precedence over those who already possessed claims and thus to avoid the provisions of the statute." 276 N.Y. at 33, 11 N.E.2d 339.

In the later Court of Appeals case, *W.L. Development Corp. v. Trifort Realty,* supra, the court observed that there is no provision in the Lien Law which prevents a contractor and an owner from entering into a mortgage agreement, and that a prospective mechanic's lienor is not precluded from taking a mortgage. However, the court held that:

"Section 7 of the Lien Law provides protection against the granting of collusive mortgages used for the purpose of avoiding provisions of that law. *Where a contractor takes a mortgage when mechanics' lienors already possess claims against the property, then it may be assumed that the mortgagee seeks to take precedence over the others* and section 7 would void that mortgage as to the other lienors (*Foxson v. Elmus Bldg. Corp.,* 276 N.Y. 30, 11 N.E.2d 339). But this provision implies that a mortgage honestly given in good faith *prior to the existence of any such claims will be valid.* [Emphasis added]" 44 N.Y.2d at 498, 406 N.Y.S.2d 437, 377 N.E.2d 969.

The court concluded that the mortgage at issue in that case was valid because it was created at a time when there were no existing claims for providing labor or materials for the improvement of the real property. Indeed, construction had not commenced until nine months after the recording of the mortgage, ruling out any possibility that a collusive mortgage had been granted.

The facts in the instant case are consistent with those in *Foxson,* supra. J & J Mechanical's fifth mortgage was recorded on November 1, 1979, at a time when a mechanic's lienor, Kat Excavators, already possessed a claim against the property for labor and materials, having commenced its work on January 29, 1979. The Court of Appeals decisions have adopted the view

that a mortgage granted under such circumstances warrants an assumption that the purpose of the mortgage was to gain priority over those who already possessed claims against the property, in contravention of section 7 of the Lien Law. Therefore, the fifth mortgage lien of J & J Mechanical must be subordinated as to all prospective lienors who, at the time the mortgage was created, had existing claims on account of the improvement of the real property.

A judgment is not vulnerable to attack under § 7 as is the case with a mortgage. This is understandable in light of the differences inherent in a mortgage transaction. A mortgage is an agreement between two parties which creates a consensual lien, as opposed to a judgment which is obtained through the unilateral action of one party bringing suit against another. Hence, there is no agreement underlying a judgment that could be the basis of a charge of collusion between the parties.

■ The mortgagee, J & J Mechanical, alternatively argues that its mortgage should be treated as if it were a mechanic's lien, since it was granted in connection with labor and materials furnished for improvements on the debtor's property. Such a change of status would place the mortgagee on a parity with Kat Excavators' mechanic's lien, in accordance with the earlier discussion concerning the priority of the Cody Lumber judgment vis-a-vis a subsequently filed mechanic's lien.

If a creditor wants to enjoy the status of a mechanic's lienor, it must comply with the statutory requirements of the Lien Law. Since the lien arises as of the date the notice of lien is filed, *Beacon Construction Co., Inc. v. Matco Electric Co. Inc.,* supra, the sine qua non of obtaining a mechanic's lien is to file such notice properly in accordance with § 9 and § 10 of the Lien Law. If J & J Mechanical wanted the benefits that can be derived from becoming a mechanic's lienor, it could have filed a notice of lien during the progress of, or at the completion of its work on June 1, 1979, instead of opting for the status of a mort-

gagee. In the case of *Ausable Chasm Co. v. Hotel Ausable & Country Club, Inc.* supra, the court addressed this point:

"A mechanic's lien is a creature of statute and relative thereto requirements must be strictly complied with. This lienor could have filed his lien against the property upon commencing the job. He did not do this and accordingly, unfortunate as it may seem for his position, lost the protection which he might otherwise have had." 33 N.Y.S.2d at 429.

Moreover, J & J Mechanical's fifth mortgage was recorded on November 1, 1979, *five* months after the completion of its work. Even if this court were inclined to treat the mortgage as if it were a notice of lien, it would not have been filed in compliance with the statutory *four* month period prescribed in former § 10. The failure to file a notice of lien within the statutory period is fatal to the lien. *Stevens v. Ogden,* 130 N.Y. 182, 29 N.E. 229 (1891); *Spencer v. Barnett,* 35 N.Y. 94 (1866). Thus, the mortgagee's argument fails on both grounds; the required notice of lien was never filed, and if the mortgage were deemed to have been such notice, it was recorded outside the statutory four month period. Furthermore, the New York Court of Appeals has expressed the view that

"[t]o treat [a] mortgage as a mechanic's lien, . . . would constitute an impairment of the obligations of the contract that the parties chose to make. Absent clear statutory authorization to do so, the court should not interfere with such rights. We should not read such an important power into the Lien Law absent more explicit language." *W.L. Development Corp. v. Trifort Realty,* supra, 44 N.Y.2d at 499, 406 N.Y.S.2d 437, 377 N.E.2d 969.

Accordingly, there is absolutely no basis upon which to confer mechanic's lienor status on a party who did not comply with the statutory requirements prescribed for the creation of such a lien.

## MARSHALING OF ASSETS

■ The equitable doctrine of marshaling of assets derives from the principle

" 'that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds.'

.    .    .    .    .

Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security. It deals with the rights of all who have an interest in the property involved and is applied only when it can be equitably fashioned as to all of the parties." *Meyer v. United States,* 375 U.S. 233, 236 [84 S.Ct. 318, 320, 11 L.Ed.2d 293], (1963). See also, *Equitable Savings & Loan Ass'n v. 6322 20th Ave. Corp.,* 235 N.Y.S.2d 394 (Sup. Ct.1962); *King v. Nat'l Bank of Milford,* 168 Misc. 571, 6 N.Y.S.2d 113 (Sup.Ct. 1938); *Savings and Loan Ass'n of Kingston v. Berberich,* 24 A.D.2d 187 [264 N.Y. S.2d 989] (3rd Dept.1965).

Thus the doctrine is not applied when it would prejudice the rights of third parties or involve the lienholder in litigation to recover a fund. *Bruns v. First Trust & Deposit Co.,* 250 A.D. 370, 295 N.Y.S. 412 (4th Dept.1937); *Equitable Savings & Loan Ass'n v. 6322 20th Ave. Corp.,* 235 N.Y.S.2d 394 (Sup.Ct.1962); *Duport v. First Nat'l Bank,* 288 N.Y. 261, 43 N.E.2d 34 (1942).

The sine qua non for invoking the doctrine is that the two sources of assets to which the creditors wish to resort for satisfaction of their liens, must be held by a *common debtor. Meech v. Allen,* 17 N.Y. 300 (1858); *Continental Insurance Co. v. Reeve,* 149 A.D. 835, 134 N.Y.S. 78 (2d Dept.1912); *Jenkins v. Smith,* 21 Misc. 750, 48 N.Y.S. 126 (Sup.Ct.1897); *Bruns v. First Trust & Deposit Co.,* supra. Thus, in the *Meech* case, supra, the court explained that if one creditor has a claim against debtors A and B, and a second creditor has a claim against debtor B only, the second creditor cannot compel the first creditor to seek satisfaction from A first, unless the common debtor B has a right to demand that A bear the initial liability, as where B is a surety of A. Accord, *Dorr v. Shaw,* 4 Johns Ch. 17 (1819).

In the instant case, Lawton Adams and Rings End, the two earliest mechanic's lienors, have argued that the senior mortgagees of the debtor's property should have been required to satisfy their liens by first proceeding against the Ballantynes' Rockland County property and the barn fire insurance fund, before seeking proceeds from the sale of the debtor's property. The mechanic's lienors' argument for a marshaling of assets is misapplied. The two asset sources involved herein are not held by a common debtor. The senior mortgagees' liens covered two different properties; the Ballantynes' Rockland County property, and the debtor's Westchester property. The two junior mechanic's liens cover only the debtor's property. The Ballantynes mortgaged their property to the senior mortgagees in conjunction with the mortgage of the debtor's Westchester County property, as part of the security for a total of $320,000 loaned *to the debtor,* for which the debtor was solely responsible. The Ballantynes were merely accommodation mortgagees who were *not* liable on the two notes executed solely by the debtor. As the *Meech* case illustrates, supra, the debtor has no right to compel the Ballantynes to forfeit their property before the debtor bears any liability itself for the loans. The debtor is not a surety for the Ballantynes and has no legal right to demand that they bear the initial responsibility for the loans. Therefore, the junior mechanic's lienors cannot compel the senior mortgagees to seek satisfaction from the Ballantynes' property before seeking proceeds from the sale of the debtor's property.

On the contrary, the marshaling doctrine more correctly applies to the barn fire insurance proceeds, which were part of the debtor's estate. The senior mortgagees should have been paid first from that fund, before seeking proceeds from the sale of debtor's property. Both funds are in the hands of the same debtor, and the senior mortgagees' liens attached to the insurance fund proceeds as well as the sale proceeds. The mechanic's liens attached only to the sale proceeds, as the mechanic's lienors did

not construct the barn which was destroyed in the blaze.[5] If the $50,000 insurance fund were first applied to payment of the senior mortgagees, the amount of available sale proceeds with which to satisfy the junior mechanic's lienors would correspondingly increase. There has been no evidence presented from which it could be concluded that the trustee did not in fact liquidate the insurance fund on behalf of the senior mortgagees before distributing the sale proceeds. If the trustee did not follow this procedure, he is hereby required to adjust the distribution accordingly.

## CONCLUSIONS OF LAW

1. The two earliest mechanic's lienors, namely defendants Lawton Adams and Rings End will share a first priority status.

2. The judgment lienor, defendant Cody Lumber, will hold a second priority status.

3. The last mechanic's lienor, defendant Kat Excavators, will hold a third priority status.

4. The fifth mortgagee, defendant J & J Mechanical will hold a fourth priority status.

5. That part of the third counterclaim asserted by defendants Lawton Adams and Rings End, which contends that the senior mortgagees should have satisfied their liens by first proceeding against the Ballantynes' Rockland County property, is dismissed. That part of the counterclaim which calls for distribution of the barn fire insurance fund to the senior mortgagees prior to their receiving sale proceeds, is granted.

SUBMIT ORDER on notice.

---

5. Section 4–a states in pertinent part:

"4–a. Insurance proceeds liable for demands.

The proceeds of any insurance which by the terms of the policy are payable to the owner of real property improved, and actually received or to be received by him because of the destruction or removal by fire or other casualty of an improvement on which lienors have performed labor or services or for which they have furnished materials, shall after the owner has been reimbursed therefrom for premiums paid by him, if any, for such insurance, be subject to liens provided by this act to the same extent and in the same order of priority as the real property would have been had such improvement not been so destroyed or removed." ...